## JONES, SUPERINTENDENT, MISSOURI TRAINING CENTER FOR MEN AT MOBERLY v. THOMAS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 88–420.   Argued April 26, 1989—Decided June 19, 1989

*Stephen D. Hawke*, Assistant Attorney General of Missouri, argued the cause for petitioner. With him on the briefs were *William L. Webster*, Attorney General, and *John M. Morris III*, Assistant Attorney General.

*Springfield Baldwin*, by appointment of the Court, 489 U. S. 1006, argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Acting Solicitor General Bryson, Assistant Attorney General Dennis,*

JUSTICE KENNEDY delivered the opinion of the Court.

After it became apparent that two consecutive sentences had been imposed where state law permitted but one, a Missouri court vacated the shorter of the two and credited the time already served against the remaining sentence. At the time the court entered its order, the prisoner had completed serving the shorter sentence. The question presented is whether the longer sentence can remain in force, consistent with double jeopardy principles.

## I

Respondent Larry Thomas attempted to rob a St. Louis, Missouri, auto parts store in 1972. Inside the store, respondent drew a gun and announced a holdup. One of the store's customers was armed, and he tried to thwart the robbery. Respondent shot and killed him in an exchange of gunfire. Respondent was convicted in 1973 by a St. Louis Circuit Court jury both of attempted robbery and of first-degree felony murder for killing during the commission of a felony. The trial court sentenced respondent to consecutive terms of 15 years for the attempted robbery and life imprisonment for the felony murder, with the 15-year sentence to run first. The Missouri Court of Appeals affirmed respondent's conviction on direct appeal. *State* v. *Thomas,* 522 S. W. 2d 74 (Mo. App. 1975).

In 1977, respondent sought state postconviction relief, arguing that it was improper for the trial court to impose separate sentences for felony murder and the underlying felony. While respondent's case was pending, the Missouri Supreme Court accepted this argument in unrelated cases, holding that the Missouri Legislature had not intended to allow separate punishments under the felony-murder statute.

---

and *Brian J. Martin;* and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

See *State* v. *Morgan*, 612 S. W. 2d 1 (1981) (en banc); *State* v. *Olds*, 603 S. W. 2d 501 (1980) (en banc).[1]

In June 1981, with respondent's postconviction motion still pending, the Governor of Missouri commuted his 15-year sentence for attempted robbery to "a term ending June 16, 1981." Respondent remained in prison under the murder sentence. In 1982, the state trial court vacated respondent's attempted robbery conviction and 15-year sentence, holding under *Olds*, *supra*, that respondent could not be required to serve both sentences. The Missouri Court of Appeals affirmed the order vacating the sentence, but rejected respondent's argument that he was entitled to immediate release. Respondent had argued that because he had completed the shorter, commuted sentence, his continued confinement under the longer sentence constituted double jeopardy. The Missouri Court noted that respondent was in no way prejudiced by the trial court's ruling, as his entire time of incarceration was credited against the life sentence. *Thomas* v. *State*, 665 S. W. 2d 621 (1983).

Respondent then sought a writ of habeas corpus in federal court. The United States District Court for the Eastern District of Missouri denied relief, holding that respondent had not suffered a double jeopardy violation because he had not been subjected to greater punishment than intended by the legislature. A three-judge panel of the Eighth Circuit reversed and remanded. 816 F. 2d 364 (1987). The majority opinion noted that as a result of the Governor's commutation, respondent had legally satisfied the 15-year sentence. See *State* v. *Cerny*, 248 S. W. 2d 844 (Mo. 1952). It further held that under this Court's decisions in *Ex parte Lange*, 18 Wall. 163 (1874), and *In re Bradley*, 318 U. S. 50 (1943), once

---

[1] After the Missouri Supreme Court decided *Morgan* and *Olds*, the Missouri Legislature amended the felony murder statute. The statute now provides that punishment may be imposed for *both* felony murder (now defined as second-degree murder) and the underlying felony. See Mo. Rev. Stat. § 565.021(2) (1986).

respondent completed one of the two sentences that could have been imposed by law, he could not be required to serve any part of the other. The majority went on, however, to hold that the double jeopardy violation could be cured under this Court's decision in *Morris* v. *Mathews*, 475 U. S. 237 (1986), which held that an unlawful conviction of both felony murder and the underlying felony could be remedied by resentencing on a lesser included offense of nonfelony murder. The panel therefore granted a conditional writ, so that respondent could be resentenced for the non-jeopardy-barred offense of nonfelony murder or released.

Judge McMillian concurred in part and dissented in part. He agreed that respondent's double jeopardy rights were violated, but stated that he would not allow resentencing because he preferred the analysis of JUSTICE BRENNAN's *dissenting* opinion in *Mathews*. 816 F. 2d, at 371. Judge Bowman dissented, concluding that the double jeopardy prohibition against multiple punishments was not violated because respondent would serve time only under the life sentence, which was a single valid punishment intended by the legislature. Judge Bowman joined Judge Hanson, however, in holding that respondent could be resentenced under *Mathews*.

The Eighth Circuit granted rehearing en banc and ordered respondent's unconditional release. 844 F. 2d 1337 (1988). The court held that under *Lange, supra,* and *Bradley, supra,* respondent could not be punished further once he had satisfied the sentence for attempted robbery. The court further held that *Mathews, supra,* was inapplicable because the prisoner in that case had not completed either of his sentences. Four judges dissented. We granted certiorari, 488 U. S. 1003 (1989), and now reverse.

## II

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." The Clause affords

three protections to the criminal defendant. The first two, which are the most familiar, protect against a second prosecution for the same offense after acquittal, and against a second prosecution for the same offense after conviction. See, e. g., Ohio v. Johnson, 467 U. S. 493, 498 (1984). Neither of these protections against successive prosecutions is involved here. Rather, respondent's initial conviction and sentence for both felony murder and the underlying felony violated the third aspect of the Double Jeopardy Clause, the protection against "multiple punishments for the same offense" imposed in a single proceeding. See North Carolina v. Pearce, 395 U. S. 711, 717 (1969). The constitutional question in this case is what remedy is required to cure the admitted violation.

The answer turns on the interest that the Double Jeopardy Clause seeks to protect. Our cases establish that in the multiple punishments context, that interest is "limited to ensuring that the total punishment did not exceed that authorized by the legislature." United States v. Halper, 490 U. S. 435, 450 (1989); see Johnson, supra, at 499; Missouri v. Hunter, 459 U. S. 359, 366–367 (1983). The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments. See, e. g., Johnson, supra, at 499. In this case, respondent's conviction of both felony murder and attempted robbery gave rise to a double jeopardy claim only because the Missouri Legislature did not intend to allow conviction and punishment for both felony murder and the underlying felony. E. g., Hunter, supra, at 368; see also Morgan, supra, at 1; Olds, supra, at 510 (construing Missouri statute).

Given that, in its application to the case before us, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended," Hunter, supra, at 366, the state-court

remedy fully vindicated respondent's double jeopardy rights. The Missouri court vacated the attempted robbery conviction and sentence and credited the time that respondent had served under that conviction against the remaining sentence for felony murder. This remedy of crediting time already served against the sentence that remained in place is consistent with our approach to multiple punishments problems in other contexts. See *Pearce, supra,* at 718–719 (credit for time served applied on resentencing at second trial following appeal). Respondent now stands convicted of felony murder alone, and his continued confinement under the single sentence imposed for that crime is not double jeopardy.[2]

Respondent, as did the Court of Appeals below, relies on this Court's opinions in *Lange, supra,* and *Bradley, supra,* for the proposition that the Double Jeopardy Clause requires immediate release for the prisoner who has satisfied the shorter of two consecutive sentences that could not both lawfully be imposed. We think this approach depends on an overly broad reading of those precedents. *Lange* and *Bradley* do contain language to the effect that once a defendant "had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." 18 Wall., at 176. But application of this language to the facts presented here is neither compelled by precedent nor supported by any double jeopardy principle.

In *Ex parte Lange,* the defendant had been convicted of stealing mail bags, a federal offense punishable by either a $200 fine *or* a 1-year prison term. The trial court, how-

---

[2] Even if the Double Jeopardy Clause provided an absolute bar to multiple punishments in a single trial regardless of legislative intent, see *Missouri* v. *Hunter,* 459 U. S. 359, 369 (1983) (MARSHALL, J., dissenting), the fact would remain that respondent is now serving only a single sentence for a single offense. Under any view of the substantive content of the double jeopardy bar against multiple punishments, respondent has had every benefit the Clause affords.

ever, sentenced Lange to a $200 fine *and* one year in prison. Lange paid the fine and spent five days in prison before seeking a writ of habeas corpus from the trial court. The trial judge then vacated the earlier judgment and sentenced Lange to one year's imprisonment from that date. Lange sought a writ of habeas corpus in this Court, which held that he was entitled to be released. The Court noted that Lange's fine had already passed into the Treasury and could not be returned to him. If the second sentence were enforced, Lange would therefore have paid a $200 fine *and* spent a year plus five days in prison. See *id.*, at 175. This punishment would obviously have exceeded that authorized by the legislature. *Lange* therefore stands for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess of that authorized by the legislature, see *United States* v. *DiFrancesco*, 449 U. S. 117, 139 (1980), and not for the broader rule suggested by its dictum.

*In re Bradley*, 318 U. S. 50 (1943), provides a closer analogy to this case. The defendant in *Bradley* was sentenced for contempt to a $500 fine *and* six months' imprisonment under a statute that provided only for fine *or* imprisonment. Bradley was taken to prison, and two days later paid the fine. The trial court then realized its mistake, amended its sentencing order by omitting the fine and retaining only the 6-month prison sentence, and instructed the Clerk to return the fine to Bradley's attorney, who refused to accept it. This Court, in a brief opinion citing *Lange*, held that Bradley was entitled to be released, stating that where "one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint." 318 U. S., at 52.

Strict application of *Bradley* would support respondent here. Under this view, satisfaction of one of two alternatives that could lawfully be imposed (*e. g.*, the fine in *Bradley* and the commuted sentence here) is dispositive, and any attempt to correct the erroneous sentence by repaying the fine

or crediting time served would be futile. We think this approach ignores important differences between this case and *Bradley*. *Bradley* and *Lange* both involved alternative punishments that were prescribed by the legislature for a single criminal act. The issue presented here, however, involves separate sentences imposed for what the sentencing court thought to be separately punishable offenses, one far more serious than the other. The alternative sentences in *Bradley*, moreover, were of a different type, fine and imprisonment. While it would not have been possible to "credit" a fine against time in prison, crediting time served under one sentence against the term of another has long been an accepted practice. See, *e. g.*, *North Carolina* v. *Pearce*, 395 U. S. 711 (1969).

In a true alternative sentences case such as *Bradley*, it would be difficult to say that one punishment or the other was intended by the legislature, for the legislature viewed each alternative as appropriate for some cases. But here the legislature plainly intended one of two results for persons who committed murder in the commission of a felony: Either they were to be convicted of felony murder, or they were to be convicted separately of the felony and of nonfelony murder.[3] It cannot be suggested seriously that the legislature

---

[3] The Court of Appeals' conclusion that the state court could not cure the double jeopardy violation through the alternative procedure approved in *Morris* v. *Mathews*, 475 U. S. 237 (1986), is therefore difficult to understand. In *Mathews*, we held that a violation of the double jeopardy rule against multiple punishments for the same offense in *successive* trials could be cured by resentencing to a lesser included offense that was not jeopardy barred. In that case, Mathews was first convicted of aggravated robbery. In a separate trial, he was then convicted of felony murder based on the robbery. The second conviction violated the Double Jeopardy Clause. See, *e. g.*, *Harris* v. *Oklahoma*, 433 U. S. 682 (1977) *(per curiam)* (successive prosecutions for felony murder and the underlying felony a double jeopardy violation). Yet Mathews' conviction of felony murder necessarily entailed a jury finding that he was guilty of the lesser included offense of nonfelony murder. Because nonfelony murder is not the "same offense" as aggravated robbery, there was no double jeopardy bar to a successive

intended an attempted robbery conviction to suffice as an alternative sanction for murder. The suggestion of JUSTICE SCALIA's dissent, that the same analysis of legislative intent applies to the $200 fine imposed in *Lange, post,* at 390, is difficult to understand. By the terms of the statute itself, the legislature in *Lange* plainly did intend that in some cases the sentencing judge would impose "a mere $200 fine for the gravity of offense at issue there." *Ibid.*

JUSTICE SCALIA observes that the Double Jeopardy Clause protects not only against punishment in excess of legislative intent, but also against additions to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality. *Post,* at 393–394. But this case does not present the situation posited by the dissent where a judge imposes only a 15-year sentence under a statute that permitted 15 years to life, has second thoughts after the defendant serves the sentence, and calls him back to impose another 10 years. *Post,* at 392. Here we must determine whether

---

prosecution for that offense. We therefore held that the violation could be cured by resentencing respondent for nonfelony murder, unless Mathews could show prejudice from the admission of evidence on the felony-murder charge that would not have been admissible as to nonfelony murder, in which case he would be entitled to a new trial.

The Court of Appeals concluded that *Mathews* was not applicable to this case because the prisoner in *Mathews* had not completed his sentence for robbery prior to the resentencing for nonfelony murder, while here Thomas satisfied the attempted robbery sentence. 844 F. 2d 1337, 1342 (CA8 1988). This distinction has no legal significance. Because nonfelony murder is not the same offense as attempted robbery, see, *e. g., Blockburger* v. *United States,* 284 U. S. 299 (1932) (defining "same offense"), there would be no double jeopardy bar to punishing Thomas for that offense, even through a second full trial. The rule of *Morris* v. *Mathews* merely allows entry of judgment without the need for a new trial where the jury's verdict of guilt as to felony murder in the first trial necessarily included a determination that the defendant committed nonfelony murder. Under the Missouri felony-murder statute that applied to Thomas, the jury did make this determination, and there is no reason that *Mathews* could not have applied here if the state court had chosen that course.

the resentencing of respondent was indeed the imposition of an additional sentence, or a valid remedy for improper "cumulative sentences imposed in a single trial." *Hunter*, 459 U. S., at 366. There can be no doubt it was the latter.

JUSTICE SCALIA's discussion of the defendant's expectation of finality makes no independent contribution to the inquiry, for in the end the dissent's argument boils down to *Bradley*. Respondent plainly had no expectation of serving only an attempted robbery sentence when he was convicted by the Missouri trial court. Indeed, since *Morgan* and *Olds* had not been decided when respondent was sentenced, his expectation at that point was to serve both consecutive sentences. Once it was established that Missouri law would not allow imposition of both sentences, respondent had an expectation in serving *"either* 15 years (on the one sentence) *or* life (on the other sentence)." *Post*, at 395. The dissent rejects our conclusion that the Missouri court's remedy fulfilled that expectation as "ruled out by *Bradley*." *Ibid*. But as discussed above, we do not think the law compels application of *Bradley* beyond its facts. Instead, we believe that the intent of the legislature, which this aspect of the Double Jeopardy Clause serves to protect, provides the standard for evaluating the Missouri court's remedy for the Clause's violation.

Extension of *Bradley* to these facts would also lead to anomalous results. Under respondent's theory, for example, everything depends on the order in which the consecutive sentences were originally imposed. Had respondent been sentenced to the life sentence first, he would be serving the very same term, but could advance no double jeopardy claim. There is no indication that the order of the sentences was of the slightest importance to the sentencing judge, and there is no reason constitutional adjudication should turn on such fortuities. Respondent also concedes that where *concurrent* sentences are imposed, unlawful imposition of two sentences may be cured by vacating the shorter of the two sentences even where it has been completed. See *Hardy* v.

*United States*, 292 F. 2d 192 (CA8 1961); *United States* v. *Leather*, 271 F. 2d 80 (CA7 1959), cert. denied, 363 U. S. 831 (1960). Ironically, respondent's argument for immediate release thus depends on the fact that he was given consecutive terms, which are typically reserved for more culpable offenders. We have previously observed that "[t]he Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza* v. *United States*, 330 U. S. 160, 166–167 (1947). We will not depart from that principle today, and we decline to extend *Bradley* beyond its facts.

### III

Double jeopardy is an area of the law filled with technical rules, and the protections it affords defendants might at times be perceived as technicalities. This is irrelevant where the ancient and important principles embodied in the Double Jeopardy Clause are implicated. "Violations of the Double Jeopardy Clause are no less serious than violations of other constitutional protections." *Mathews*, 475 U. S., at 255 (BLACKMUN, J., concurring in judgment). But neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls. The Missouri court's alteration of respondent's sentence to a single term for felony murder with credit for time served provided suitable protection of his double jeopardy rights.

The decision of the Court of Appeals is reversed, and the case is remanded for dismissal of respondent's petition.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I join in JUSTICE SCALIA's dissenting opinion, with the exception of its closing footnote. I adhere to my view that the Double Jeopardy Clause requires, except in very limited circumstances, that all charges against a defendant growing out

of a single criminal transaction be tried in one proceeding. See *Ashe* v. *Swenson*, 397 U. S. 436, 448–460 (1970) (BRENNAN, J., concurring); *Morris* v. *Mathews*, 475 U. S. 237, 257–258 (1986) (BRENNAN, J., dissenting). For this reason I do not agree that the State is free to retry respondent for a non-jeopardy-barred lesser included offense.

JUSTICE SCALIA, with whom JUSTICE STEVENS joins, and with whom JUSTICE BRENNAN and JUSTICE MARSHALL join as to all but the footnote, dissenting.

This is not the first time we have been called upon to consider whether a criminal defendant's satisfaction of one of two alternative penalties prevents a court from imposing (or reimposing) the second penalty in a subsequent proceeding. In *Ex parte Lange*, 18 Wall. 163 (1874), the first case to recognize the Double Jeopardy Clause's protection against multiple punishment, petitioner was convicted of stealing mailbags from the Post Office, under a statute carrying a punishment of *either* imprisonment for up to one year *or* a fine of up to $200. The presiding judge erroneously imposed the maximum of both punishments. After petitioner had paid his fine (which was remitted by the Clerk of Court to the United States Treasury) and had spent five days in prison, the judge realized his mistake and entered an order vacating the former judgment and resentencing petitioner to one year in prison. This Court stated that because petitioner had "fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence," *id.*, at 176, the court's *"power to punish for that offence was at an end," ibid.* (emphasis added). Holding that the judge's second order violated petitioner's rights under the Double Jeopardy Clause, the Court ordered that petitioner be freed.

More recently, in *In re Bradley*, 318 U. S. 50 (1943), a District Judge found petitioner guilty of contempt and sentenced him to six months in prison and a $500 fine. Petitioner began serving his prison sentence, and his attorney

paid the fine to the Clerk of the Court three days later. The fine was not paid into the Treasury. Later that day, having discovered that the relevant statute permitted imprisonment *or* fine, but not both, the court issued a new order amending the sentence to omit the fine and instructed the Clerk to return the $500 to petitioner. Petitioner refused to accept the money. We held that order to be "a nullity." *Id.*, at 52.

> "When, on October 1, the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the two alternative penalties of the law, the power of the court was at an end." *Ibid.*

The present case is indistinguishable from *Lange* and *Bradley.* Here, as there, only one of two available punishments could lawfully be imposed for the conduct in question; and here, as there, the defendant fully satisfied one of the two. Under the law of the State of Missouri, respondent's actions in the Reid Auto Parts store on November 8, 1972, allowed the State to convict him of attempted armed robbery, with a maximum penalty of 15 years in prison, *or* of felony murder, with a maximum penalty of life imprisonment. The State could not convict him or punish him for both offenses. Therefore, once respondent "fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone." *Ex parte Lange, supra*, at 176. In the present case, as in *Bradley*, the State attempted in a second proceeding to "give back" the detriment respondent had suffered as a result of the fully satisfied alternative—by crediting the 15-year sentence for attempted armed robbery that he had already served against the second (life) sentence that had been imposed. But I see no more reason to allow a crediting here than there was to allow a refund in *Bradley.* Does this produce, as the Court

alleges, an "anomalous resul[t]," *ante*, at 386, and an "unjustified windfal[l]," *ante*, at 387? Undoubtedly. Just as it did in *Bradley*. And just as the Double Jeopardy Clause often does (to an even greater degree) in other contexts — where, for example, a prosecutorial error after the jury has been impaneled permits the defendant to go off scot free. *E. g.,* *Downum* v. *United States*, 372 U. S. 734, 737–738 (1963).

The Court candidly recognizes that a "[s]trict application of *Bradley*," *ante*, at 383, compels the conclusion that requiring respondent to serve the life sentence after completion of the 15-year sentence violates the Double Jeopardy Clause. It advances three related arguments, however, to explain why "strict application" can be avoided. I find none of them persuasive.

Most readily answered is the contention that *"Bradley* and *Lange* both involved alternative punishments that were prescribed by the legislature for a single criminal act." *Ante*, at 384. This in no way distinguishes those cases, since it describes the facts of this case just as well. Although the sentencing court undoubtedly *thought* attempted armed robbery and felony murder "to be separately punishable offenses," *ibid.*, that court, we now know, was wrong. Under the correct view of Missouri law, the 15-year sentence and the life sentence were "alternative punishments . . . prescribed by the legislature for a single criminal act," *ibid.* The Court states that "[i]t cannot be suggested seriously that the legislature intended an attempted robbery conviction to suffice as an alternative sanction for murder," *ante*, at 384–385. Perhaps not, but it might also have been said in *Lange* that the legislature did not intend a mere $200 fine for the gravity of offense at issue there. Just as the judge in that case frustrated the probable legislative intent by inadvertently imposing the lesser penalty that was available, unaware that it would preclude the greater, so the judge in the present case frustrated the probable legislative intent by inadvertently entering the lesser conviction and sentence, unaware that it would preclude the greater. But that is beside the point.

The Double Jeopardy Clause is not a device designed to assure effectuation of legislative intent—but to the contrary is often the means of frustrating it. The relevant question pertaining to legislative intent is not whether the Missouri Legislature intended an attempted armed robbery sentence for the crime of murder, but whether it intended that both a felony-murder sentence and an attempted armed robbery sentence could be imposed for the same crime. The Missouri Supreme Court has said not. See *State* v. *Morgan,* 612 S. W. 2d 1 (1981); *State* v. *Olds,* 603 S. W. 2d 501, 510 (1980). That being so, if respondent has served one of the two alternative sentences that could lawfully be imposed, he cannot be required to serve the other as well.

Second, the Court distinguishes *Bradley* on the ground that there "[t]he alternative sentences . . . were of a different type, fine and imprisonment," *ante,* at 384, so that it would not have been possible to credit the satisfied fine against the as-yet-unserved sentence. It is difficult to imagine, however, why the difference between a credit and a refund (which could have been made in *Bradley)* should be of constitutional dimensions insofar as the Double Jeopardy Clause is concerned. *Bradley,* of course, did not rely upon any difference in the nature of the two punishments, but upon the mere fact that one of them had been completely executed. "As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative punishments of the law, the power of the court was at an end." 318 U. S., at 52. Likewise *Lange:*

> "[I]n that very case, and for that very offence, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed . . . . [T]hus . . . [the court's] power to punish for that offence was at an end. . . . [T]he authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited." 18 Wall., at 176.

Finally, the Court states that in the multiple punishments context, "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Ante*, at 381, quoting *Missouri* v. *Hunter*, 459 U. S. 359, 366 (1983). If that were true it would certainly permit proceedings quite foreign to our criminal-law tradition. If, for example, a judge imposed only a 15-year sentence under a statute that permitted 15 years to life, he could—as far as the Court's understanding of the Double Jeopardy Clause is concerned—have second thoughts after the defendant has served that time, and add on another 10 years. I am sure that cannot be done, because the Double Jeopardy Clause is a statute of repose for sentences as well as for proceedings. Done is done. The Court is able to quote *Hunter* for this unusual result only because its quotation is incomplete. What we said in that case, and have subsequently repeated in other cases, is that "[w]ith respect to cumulative sentences *imposed in a single trial*, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Ibid.* See also *id.*, at 368 (The Double Jeopardy Clause does not "preclud[e] the imposition, *in a single trial*, of cumulative punishments pursuant to those statutes") (emphasis added); *id.*, at 368–369 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes *in a single trial*") (emphasis added).

In both of the cases in which we have applied the Court's "legislative intent" formulation of the Double Jeopardy Clause to uphold the imposition of multiple penalties, the penalties had been imposed (or would have been imposed) in a single proceeding. See *Missouri* v. *Hunter, supra* (defendant convicted of both armed criminal action and the underlying felony of armed robbery in single trial); *Ohio* v. *Johnson*, 467 U. S. 493 (1984) (defendant pleaded guilty to two lesser

offenses and trial court dismissed three greater offenses, stating that prosecution would be barred under Double Jeopardy Clause). But when the added punishment, even though authorized by the legislature, was imposed in a later proceeding, we held that the Double Jeopardy Clause was a bar. In *United States* v. *Halper*, 490 U. S. 435, 451, n. 10 (1989), we said:

> "That the Government seeks the civil penalty in a second proceeding is critical in triggering the protections of the Double Jeopardy Clause. Since a legislature may authorize cumulative punishment under two statutes for a single course of conduct, the multiple-punishment inquiry in the context of a single proceeding focuses on whether the legislature actually authorized the cumulative punishment. See *Ohio* v. *Johnson*, 467 U. S. 493, 499–500 (1984). On the other hand, when the Government has already imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding."

See also *id.*, at 450 (*"In a single proceeding* the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature") (emphasis added); *ibid.* ("Nor does the decision [in *Halper*] prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized civil penalties *in the same proceeding*") (emphasis added).

In the present case, of course, it was not the same proceeding but a second proceeding that added time to the 15-year sentence the defendant had already satisfied for his crime. In those circumstances, our cases establish that the relevant double jeopardy criterion is not only whether the total

punishment authorized by the legislature has been exceeded, but also whether the addition upsets the defendant's legitimate "expectation of finality in the original sentence," *United States* v. *DiFrancesco*, 449 U. S. 117, 139 (1980). In the latter case we upheld against a double jeopardy challenge a statute that allowed the Government to appeal as inadequate a District Court's sentence for a "dangerous special offender." We did so because, by reason of the appeal provision itself, the defendant had no legitimate expectation of finality in the original sentence. See *id.*, at 136–137.

We applied the same rule in *Pennsylvania* v. *Goldhammer*, 474 U. S. 28 (1985) *(per curiam)*. There the defendant was convicted of 56 counts of forgery and 56 counts of theft. The trial court sentenced him to a term of imprisonment on one theft count and a term of probation on one forgery count, and suspended sentence on the remaining counts. On appeal, the Supreme Court of Pennsylvania held that the theft count on which the defendant had been sentenced was barred by the applicable statute of limitations, and denied, on double jeopardy grounds, the State's request that the case be remanded for resentencing on the nonbarred theft counts. We did not reverse that disposition outright, but remanded so that the Supreme Court of Pennsylvania might consider, pursuant to *DiFrancesco*, "whether the Pennsylvania laws in effect at the time allowed the State to obtain review of the sentences on the counts for which the sentence had been suspended." 474 U. S., at 30. It is clear from *DiFrancesco* and *Goldhammer* that when a sentence is increased in a second proceeding "the application of the double jeopardy clause . . . turns on the extent and legitimacy of a defendant's expectation of finality in that sentence. If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited . . . ." *United States* v. *Fogel*, 264 U. S. App. D. C. 292, 302, 829 F. 2d 77, 87 (1987) (Bork, J.).

The principle enunciated in *DiFrancesco* also explains our decision in *Bozza* v. *United States*, 330 U. S. 160 (1947).

There the defendant was convicted of operating an illegal still, a crime which carried a *mandatory* sentence of a $100 fine and a term in prison. The trial court originally sentenced the defendant only to the term of imprisonment. When the court realized its mistake five hours later, it recalled the defendant for resentencing and imposed the $100 fine as well. We held that the resentencing did not violate the defendant's rights under the Double Jeopardy Clause. There, as in *DiFrancesco*, the defendant could not argue that his *legitimate* expectation of finality in the original sentence had been violated, because he was charged with knowledge that the court lacked statutory authority to impose the subminimum sentence in the first instance. See 330 U. S., at 166, 167. See also *United States* v. *Arrellano-Rios*, 799 F. 2d 520, 524 (CA9 1986) (stating that defendant can have no legitimate expectation of finality in an illegal sentence); *United States* v. *Edmondson*, 792 F. 2d 1492, 1496, n. 4 (CA9 1986) (same).

Applying *DiFrancesco* and *Bozza* here, it seems to me respondent must prevail. There is no doubt that the court had *authority* to impose the 15-year sentence, and respondent therefore had a legitimate expectation of its finality. There are only two grounds on which that could possibly be contested: (1) that the court had authority to impose a 15-year sentence, but not *both* a 15-year sentence and life, or (2) that his legitimate expectation was not necessarily 15 years, but rather *either* 15 years (on the one sentence) *or* life (on the other sentence). But at least where, as here, the one sentence has been fully served, these alternative approaches to defining his legitimate expectation are ruled out by *Bradley*. There also it could have been said that the court had no authority to impose both the $500 fine and the six months' imprisonment; and there also it could have been said that the defendant's legitimate expectation was not necessarily a $500 fine, but either a $500 fine or six months' imprisonment. But we in effect rejected those approaches, holding that once the fine had been paid a subsequent proceeding could not re-

place it with the alternative penalty. There is simply no basis for departing from that holding here.

The Double Jeopardy Clause is and has always been, not a provision designed to assure reason and justice in the particular case, but the embodiment of technical, prophylactic rules that require the Government to turn square corners. Whenever it is applied to release a criminal deserving of punishment it frustrates justice in the particular case, but for the greater purpose of assuring repose in the totality of criminal prosecutions and sentences. There are many ways in which these technical rules might be designed. We chose one approach in *Bradley*—undoubtedly not the only possible approach, but also not one that can be said to be clearly wrong. (The fact that it produces a "windfall" separates it not at all from other applications of the double jeopardy guarantee.) With technical rules, above all others, it is imperative that we adhere strictly to what we have stated the rules to be. A technical rule with equitable exceptions is no rule at all. Three strikes is out. The State broke the rules here, and must abide by the result.

For these reasons, I believe the Court of Appeals was correct to set aside respondent's life sentence. I would therefore affirm the judgment of the Court of Appeals, and respectfully dissent from the Court's disposition of this case.*

---

*I agree with the Court, *ante*, at 384–385, n. 3, that the Court of Appeals erred in saying that the State could not resentence or retry respondent for a non-jeopardy-barred lesser included offense, see *Morris* v. *Mathews*, 475 U. S. 237 (1986). Since it is undisputed, however, that the State has made no attempt to do that, that portion of the Court of Appeals' opinion was the purest dictum, and no basis for reversal of its judgment.