**Curtis Ray WARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–93–00294–CR, 01–93–00301–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 1996.

Robert G. Turner, Houston, for appellant.

Michael R. Little, Steven Green, Anahuac, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and WILSON, JJ.

## OPINION ON REMAND FROM THE UNITED STATES SUPREME COURT

OLIVER–PARROTT, Chief Justice.

Appellant, Curtis Ray Ward, was indicted for aggravated possession of marihuana and for possession of marihuana on which no tax had been paid. In a plea in bar and an application for writ of habeas corpus, appellant asserted that the double jeopardy clause of the United States Constitution barred his prosecution for these offenses. The trial court denied relief. This Court affirmed. The Court of Criminal Appeals refused appellant's petition for discretionary review. However, the United States Supreme Court vacated our judgment and remanded the case back to this Court for further consideration in light of its decision in *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). *See Ward v. State*, 870 S.W.2d 659 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), *vacated*, —— U.S. ——, 115 S.Ct. 567, 130 L.Ed.2d 485 (1994). We reverse and render judgment that the writ of habeas corpus be granted.

### Factual and Procedural Background

According to his plea in bar, appellant was stopped and searched by Chambers County authorities on February 13, 1992. The officers found 78 pounds of marihuana in a locked tool box, and seized a radar detector and $2,165 in cash.

Appellant was indicted for aggravated possession of marihuana (cause number 7837) and for possession of marihuana on which no tax had been paid (cause number 7838).

On March 16, 1992, John Sharp, Comptroller of Public Accounts, sent appellant a notice of tax due, advising appellant that he owed $109,546.50, as well as a $10,954.65 penalty for failure to pay tax on the marihuana. Appellant made a $250 payment on the amount owed.

The State filed a motion for summary judgment seeking forfeiture of the cash and radar detector seized by the police. Appellant did not contest the motion, and in July 1992, the trial court granted the motion and ordered the $2,165 and the radar detector forfeited to the State of Texas.

On October 28, 1992, appellant filed a plea in bar, and on February 23, 1993, he filed an application for writ of habeas corpus. In both, he asserted that because he "suffered a fine and forfeiture, clearly penal in nature, arising out of the transaction leading to Applicant's criminal prosecution," prosecution for the charged offenses would subject him to double jeopardy. The trial court denied both motions.

### Double Jeopardy

■ The double jeopardy clause of the fifth amendment [1] protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). This case involves the third of these protections.

### Tax Assessment

In his first two points of error, appellant asserts that: (1) assessment of a tax under

1. U.S. Const. Amend. V.

the Texas Controlled Substances Tax[2] "is considered a punishment for Fifth Amendment, Double Jeopardy Clause Purposes"; and (2) the assessment of a tax against him pursuant to the statute and his partial payment of the tax "bars subsequent prosecution for possession of the marihuana that constituted the basis for the imposition of the tax."

## I. *Kurth Ranch*

Appellant relies upon *Kurth Ranch* to support his argument that the assessment of the tax and his partial payment of the tax bars his prosecution for the offenses for which he was indicted. In *Kurth Ranch*, the Supreme Court addressed the question "whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." ―― U.S. at ――, 114 S.Ct. at 1941. The Court found that Montana's Dangerous Drug Tax was "too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at ――, 114 S.Ct. at 1948.

The Kurth family had been growing large quantities of marihuana on the family ranch. *Id.* at ――, 114 S.Ct. at 1942. Six family members were arrested and charged with conspiracy to possess drugs with the intent to sell, or, alternatively, possession of drugs with the intent to sell. *Id.* Each of the family members entered into a plea agreement and was sentenced by the court. *Id.*

The State assessed a tax of almost $900,-000 on the seized drugs. *Id.* Although the family challenged the assessment in administrative proceedings, these proceedings were stayed when the Kurths filed bankruptcy. *Id.* at ――, 114 S.Ct. at 1943. When the State filed a proof of claim for the unpaid tax with the bankruptcy court, the Kurths challenged the constitutionality of the tax. *Id.* The bankruptcy court found that only $181,-000 of the tax was authorized by the state's

tax act, but held that this assessment constituted a form of double jeopardy. *Id.* The Supreme Court agreed.

The Supreme Court noted that although neither a high rate of taxation nor an obvious deterrent purpose automatically marked a tax as a form of punishment, these factors are "consistent with a punitive character." *Id.* at ――, 114 S.Ct. at 1946. The Montana tax was intended to deter people from possessing marihuana, and the tax itself was more than eight times the drug's market value. *Id.* The high tax rate and deterrent purpose were not dispositive, but lent support to the characterization of the tax as punitive. *Id.* at ――, 114 S.Ct. at 1947. It was upon other features that the Court based its determination that the tax was punitive, however.

First, the Court noted that the tax was conditioned upon the commission of a crime, and was exacted only after the taxpayer had been arrested for "the precise conduct that gives rise to the tax in the first place." *Id.* at ――, 114 S.Ct. at 1947. Next, the Court noted that although the tax purported to be a property tax, it was "levied on goods that the taxpayer neither owns nor possesses when the tax is imposed." *Id.* at ――, 114 S.Ct. at 1948. The Court concluded, "This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment." *Id.* The Court then held that the tax was "the functional equivalent of a successive prosecution that placed the Kurths in jeopardy a second time 'for the same offence.'" *Id.*

## II. The Texas Controlled Substance Tax

■ The Texas statute imposes a tax on the following taxable substances: "a controlled substance, a counterfeit substance, a simulated controlled substance, or marihuana, or a mixture of any materials that contains a controlled substance, counterfeit substance, simulated controlled substance, or marihuana." TEX.TAX CODE ANN.

---

**2.** TEX.TAX CODE ANN. § 159.001–.301 (Vernon 1992 & Supp.1996).

§ 159.001(7) (Vernon Supp.1996). A dealer[3] commits an offense if he or she possesses a taxable substance on which the tax imposed by the statute has not been paid. TEX.TAX CODE ANN. § 159.201 (Vernon 1992).

Appellant asserts that the Texas tax is, for all practical purposes, identical to the Montana statute, and is therefore punitive in nature. He asserts that the following factors establish the punitive nature of the tax: (1) the amount of the tax assessed is almost the same as the Montana tax; (2) under the statute, the taxing authorities cannot compromise the amount of tax due; and (3) the tax is assessed only on illegal activity. The Fourteenth Court of Appeals has addressed the arguments raised by appellant and has concluded that the statute is a punishment for double jeopardy purposes. *Stennett v. State*, 905 S.W.2d 612, 615 (Tex.App.—Houston [14th Dist.] 1995, pet. granted).

## A. Amount of the tax

In Texas, the rate of tax is "$3.50 for each gram of a taxable substance consisting of or containing marihuana." TEX.TAX CODE ANN. § 159.101(b)(2) (Vernon 1992). Both appellant and the State agree that this amount equals a tax of about $98 an ounce. In *Kurth Ranch*, the state of Montana taxed the marihuana at $100 an ounce, an amount the Supreme Court construed to be a high tax rate. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946. The Fourteenth Court found that the Texas tax constituted a high rate of taxation, noting that the rate of $98 per ounce is almost identical to the $100 per ounce rate of the Montana tax. *Stennett*, 905 S.W.2d at 613. While a high rate of tax is not dispositive, it is, as the Supreme Court noted, "consistent with a punitive character." *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1946.

## B. Compromising the amount of tax due

Appellant asserts that another aspect of the punitive nature of the Texas tax is "the lack of ability on the part of the taxing authorities to compromise the tax amount due, absent a prosecutorial request." Section 159.206 of the statute provides:

> (a) The comptroller may settle or compromise a tax penalty, or interest imposed under this chapter only if:
>
> (1) the prosecutor of a criminal offense under this chapter or of another offense arising out of the same incident or transaction requests in writing that the comptroller settle or compromise and specifies the reason for the request; and
>
> (2) the comptroller determines that the settlement or compromise is in the best interest of the state.

TEX.TAX CODE ANN. § 159.206 (Vernon Supp. 1996). Appellant asserts that the "ability to compromise a tax assessment is characteristic of taxes imposed for revenue raising purposes." Appellant also notes that the right of the comptroller to collect a tax assessed pursuant to the statute is subordinate to the right of law enforcement agencies to seize, forfeit, and retain property. *See* TEX.TAX CODE ANN. § 159.205 (Vernon Supp.1996). The State asserts that "[t]hese provisions simply contemplate cooperation and interdependence between the comptroller and prosecutor...." The Fourteenth Court has found, however, that because these provisions dictate "a close connection between the taxing and prosecuting authorities," they suggest that the tax was intended as punishment and not as a method of raising revenue. *Stennett*, 905 S.W.2d at 614.

## C. Illegal activity

Finally, appellant asserts the Texas tax is assessed only on criminal activity. As the State notes, the Texas statute does not make assessment of the tax contingent upon an arrest, as did the Montana statute. *See Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1947. Under the Texas statute, the obligation to pay the tax arises on delivery,

---

**3.** A dealer is one who, in violation of state law, "imports into this state or manufactures, produces, acquires, or possesses" controlled substances. TEX.TAX CODE ANN. § 159.001(3) (Vernon Supp.1996).

possession or manufacture of the taxable substance, and is therefore not necessarily related to arrest. *Stennett*, 905 S.W.2d at 614. Also, the statute provides that information provided by a person in a report or return made for purposes of paying a tax imposed by the statute is confidential; with the exception of a prosecution directly related to the tax imposed, the information may not be used in any way in a prosecution of the dealer. TEX.TAX CODE ANN. § 159.005(a), (d) (Vernon 1992). Thus, concludes the State, the Texas tax is distinguishable from the Montana tax and is remedial rather than punitive. We do not find the State's arguments persuasive, however.

A dealer must engage in illegal activity before the tax is imposed. The tax is imposed on the unlawful possession, purchase, acquisition, importation, manufacture or production of a controlled substance, a counterfeit substance, a simulated controlled substance, or marihuana. TEX.TAX CODE ANN. § 159.101(a), (b) (Vernon Supp.1996); *see* *Stennett*, 905 S.W.2d at 614. Significantly, the tax is *not* imposed if the purchase, importation, manufacture, or production of the taxable substance is authorized by law. TEX. TAX CODE ANN. § 159.103 (Vernon Supp. 1996); *Stennett*, 905 S.W.2d at 614. Further, as noted by the Fourteenth Court, the Texas tax "subjects possession of legal substances to the drug tax if they are simulated controlled substances. For example, if a person attempts to sell bricks of flour representing them to be bricks of cocaine, that person becomes subject to the Texas Controlled Substances Tax." *Stennett*, 905 S.W.2d at 614 (citation omitted). Clearly, the tax is conditioned on the commission of a crime.

### D. Nature of the tax

The State further asserts, "The other major aspect of the Montana drug tax that caused the Supreme Court to determine that it was punitive in nature was the fact that it

was a property tax levied on property that the Kurths no longer possessed. The Texas tax is distinguishable because it is not a property tax, but rather an excise or use tax." The State notes that the Texas tax is assessed in the same manner as the excise tax on cigarettes—that is, the State requires stamps to be purchased and affixed to the taxable substance.[4]

The Supreme Court found the Montana tax to be exceptional because, although it purported to be a property tax, it was levied on goods that, because they had been confiscated and presumably destroyed, the taxpayer neither owned nor possessed when the tax was imposed. *Kurth Ranch*, —— U.S. at ——, 114 S.Ct. at 1948. Ostensibly, the Texas tax is not, like the Montana tax, a tax on possession of goods the taxpayer no longer possesses (or that no longer exist). *See id.* We do not find this distinction dispositive.

The Texas statute does indeed provide for payment of tax prior to (or in the absence of) an arrest. However, in reality, most assessments will be made in situations like the one before us—after the dealer is arrested and the taxable substance is confiscated. Further, although it is not denominated a "property tax," the Texas tax is assessed on "the *possession*, purchase, acquisition, importation, manufacture, or production" of a taxable substance on which no tax has been paid. The Montana tax was considered a property tax because it was a tax on the *possession* and storage of dangerous drugs. *Kurth Ranch*, at ——, 114 S.Ct. at 1948. Thus, the fact that the legislature did not classify the Controlled Substances Tax as a property tax does not affect this analysis.

Additionally, in *Kurth Ranch*, the Supreme Court addressed the differences between taxes on illegal activity and so-called "sin taxes":

> Taxes imposed upon illegal activities are fundamentally different from ... mixed-motive taxes that governments impose both to deter a disfavored activity and to

---

**4.** *See* TEX.TAX CODE ANN. §§ 154.041, 159.003, 159.102 (Vernon 1992). Section 159.102(a) requires that a dealer who pays a tax imposed by the statute shall affix a tax payment certificate to the taxable substance.

raise money. By imposing cigarette taxes, for example, a government wants to discourage smoking. But because the product's benefits—such as creating employment, satisfying consumer demand, and providing tax revenues—are regarded as outweighing the harm, that government will allow the manufacture, sale, and use of cigarettes as long as the manufacturers, sellers, and smokers pay high taxes that reduce consumption and increase government revenue. These justifications vanish when the taxed activity is completely forbidden, for the legitimate revenue-raising purpose that might support such a tax could be equally well served by increasing the fine imposed upon conviction.

*Kurth Ranch,* at ——, 114 S.Ct. at 1947. Thus, the fact that the Texas controlled substances tax is assessed in a manner similar to the assessment of taxes on cigarettes is not significant.

### E. Conclusion

As the Fourteenth Court of Appeals noted, in *Kurth Ranch* the Supreme Court "did not hold that a tax must contain each of the Montana tax's punishment aspects, or only the Montana tax's punishment aspects, to constitute a punishment within the meaning of the double jeopardy clause." *Stennett,* 905 S.W.2d at 614. Although the Texas tax differs in some ways from the provisions of the Montana tax identified in *Kurth Ranch,* we agree with the Fourteenth Court that there are strong similarities between the two. *Id.* We further find that the Texas tax, like the Montana tax, is "a concoction of anomalies, too far removed in crucial aspects from a standard tax assessment to escape characterization as punishment for the purpose of

Double Jeopardy analysis." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948; *see Stennett,* 905 S.W.2d at 614–15.

We find that a tax imposed under the Texas Controlled Substances Tax statute is punishment for purposes of double jeopardy considerations. We sustain appellant's first point of error.

### II. Does assessment of the tax bar further prosecution?

■ In his second point of error, appellant asserts that the *assessment* of the tax constituted punishment and therefore precludes further prosecution. We agree. It is clear that in *Kurth Ranch* it was the *imposition* or *assessment* of the Montana tax that the Supreme Court found to be the operative event.[5]

The State further argues that even if the tax assessment is considered punishment, the only remedy to which appellant would be entitled would be "credit towards the fine that would be assessed in the event appellant is convicted of the criminal charges...." The State relies on *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), but its reliance is misplaced. In *Jones,* two consecutive sentences were imposed upon the defendant for what the sentencing court incorrectly believed to be separately punishable offenses. A lower court vacated the shorter of the two sentences and credited the time already served against the remaining sentence. The question before the Supreme Court was whether double jeopardy considerations allowed the longer sentence to remain in force. *Id.* at 378, 109 S.Ct. at 2524. The Court held that the state court's alteration of the defendant's sentence to a

---

5. The Court framed the question before it as "whether a tax on the possession of illegal drugs *assessed* after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1941 (emphasis added). The Court noted that one of the operative legal proceedings initiated by the State after the raid on the Kurths' ranch was "the *assessment* of the new tax on dangerous drugs." *Id.* at

——, 114 S.Ct. at 1942 (emphasis added). The Court noted the bankruptcy court held the *assessment* constituted a form of double jeopardy. *Id.* at ——, 114 S.Ct. at 1943 (emphasis added). Finally, the Court held that the Montana tax "is a second punishment within the contemplation of a constitutional protection that has 'deep roots in our history and jurisprudence,' and therefore must be *imposed* during the first prosecution or not at all." *Id.* at ——, 114 S.Ct. at 1948 (emphasis added).

single term with credit for time served provided suitable protection for his double jeopardy rights. *Id.* at 387, 109 S.Ct. at 2529. The Court distinguished cases involving alternative punishments of fines and imprisonment prescribed for a single offense, noting that the case before it involved separate sentences imposed for what the sentencing court thought to be separately punishable offenses.[6] We have already held that the Texas tax constitutes punishment for double jeopardy purposes. The case before us thus involves alternative punishments for a single offense.

The State further asserts that under the *Blockburger*[7] test, even if the tax assessed is considered punishment, "the only charge barred by it is the Failure to Pay Marijuana Tax charge...." Specifically, the State asserts the elements to be proved in the tax assessment are not the same as the elements of possession.

The Supreme Court specifically held that "[t]he proceeding Montana initiated to *collect a tax on the possession of drugs* was the functional equivalent of a successive criminal prosecution" for the same offense. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1948 (emphasis added). We conclude, based on this language, that the assessment of a tax on the possession of the marihuana in this case precludes subsequent prosecution for that offense.[8]

This case forces us to take on the difficult and disagreeable task described by Justice Scalia in his *Kurth Ranch* dissent—disallowing criminal punishment because a civil sanction has already been imposed. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1958 (Scalia, J., dissenting). Yet *Kurth Ranch*

permits no other result. We therefore reluctantly sustain appellant's second point of error, reverse the judgment of the trial court, and render judgment that the writ of habeas corpus be granted and the indictments against appellant be dismissed. Because of our disposition of points of error one and two, we need not address the remaining points.

WILSON, J., dissenting; dissent to follow.

---

6. The Court further noted that "it would not have been possible to 'credit' a fine against time in prison...." *Jones,* 491 U.S. at 384, 109 S.Ct. at 2527.

7. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* test is satisfied if each statutory offense requires proof of a fact that the other does not. *Id.* at 304, 52 S.Ct. at 182.

8. It is irrelevant that the tax assessment preceded the criminal prosecution. *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1958 (Scalia, J., dissenting) ("[I]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference."); *United States v. Sanchez–Escareno,* 950 F.2d 193, 200 (5th Cir.1991), *cert. denied,* 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 78 (1992).