Filed:  June 5, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

No. 01-7057
(CR-99-296-AW, CA-98-2476-M)

_____

United States of America,

                                    Plaintiff - Appellee,

        versus

Dennis Olivares,

                                    Defendant - Appellant.

_____

O R D E R

_____

    The court amends its opinion filed May 28, 2002, as follows:

    On page 5, footnote 3 -- the text of the footnote is changed to begin:  "Additionally, Olivares misunderstands our decision in United States v. Hillary ...."

                                    For the Court - By Direction


                                    /s/ Patricia S. Connor
                                    _____
                                          Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                                        No. 01-7057

DENNIS OLIVARES,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-99-296-AW, CA-98-2476-M)

  Argued: January 24, 2002

   Decided: May 28, 2002

Before WILKINSON, Chief Judge, and LUTTIG and
  MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson joined. Judge Michael wrote an opinion
concurring in the judgment.

_____

## COUNSEL

**ARGUED:** Booth Marcus Ripke, Fred Warren Bennett, BENNETT
& NATHANS, L.L.P., Greenbelt, Maryland, for Appellant. Hollis
Raphael Weisman, Assistant United States Attorney, Greenbelt,
Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

**OPINION**

LUTTIG, Circuit Judge:

In this appeal, we must decide whether the Double Jeopardy Clause bars imposition of a sentence greater than that which was originally imposed when a defendant, who has succeeded in getting his first conviction vacated, is convicted on retrial by a different magistrate judge. The district court concluded that it does not, and we agree.

### I.

A magistrate judge convicted appellant, Dennis Olivares, of assault in violation of 18 U.S.C. § 113(a)(4) and sentenced him to a fine of $500 and a $10 special assessment. J.A. 26. Olivares immediately paid the $510, and, five days later, appealed to the district court. Because the proceedings before the magistrate judge apparently were not recorded, the district court vacated the conviction and ordered a new trial. On retrial, a different magistrate judge found Olivares guilty and sentenced him to a $300 fine, a $10 special assessment, *and* 12 months of supervised probation (which he has subsequently violated[1]). J.A. 27 & n.3. Olivares did not appeal.

In March 2001 Olivares filed a petition for a writ of habeas corpus under 28 U.S.C. § 2255, claiming that the imposition of a greater sentence at his second trial violated the Double Jeopardy Clause, because by paying the original fine, he had already discharged his sentence in full. The magistrate judge recommended denying relief except that $200 should be refunded (the difference in the fines). J.A. 37. The district court adopted the magistrate's report, J.A. 38-39, and subsequently granted a certificate of appealability, J.A. 43.

### II.

Olivares contends that the imposition of a more severe penalty on retrial violates the Double Jeopardy Clause. But, as the Supreme

_____

[1] After his first probation violation, the magistrate judge increased the length of probation and ordered him to spend 30 days in a community corrections facility.

2

Court observed in *North Carolina* v. *Pearce*, 395 U.S. 711, 720 (1969), *overruled on other grounds by Alabama* v. *Smith*, 490 U.S. 794 (1989), when a defendant succeeds in getting his conviction set aside on grounds other than insufficiency of the evidence, "it has been settled that a corollary power of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, *whether or not it is greater than the sentence imposed after the first conviction*." (Emphasis added). This follows from the fact that "the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean," *Pearce*, 395 U.S. at 721. *See also Jones* v. *Thomas*, 491 U.S. 376, 381 (1989) (noting that this facet of the Double Jeopardy Clause "ensure[s] that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the [legislature]").

The principal protection afforded to defendants who succeed in having their original convictions vacated is not the Double Jeopardy Clause, but rather the Due Process Clause. *See Pearce*, 395 U.S. at 725. Due process requires that vindictiveness play no role in resentencing the defendant. *See Smith*, 490 U.S. at 798 (recognizing that sentencing discretion "must not be exercised with the purpose of punishing a successful appeal").[2]

Olivares, however, does not argue that his greater sentence resulted from vindictiveness on the part of the second magistrate judge. Indeed, he recognizes that the certificate of appealability issued by the district court was limited to the double jeopardy issue, *see* Appellant's Reply Br. at 11, and he has not moved for an additional certificate of appealability here. Instead, he asserts that the Double Jeopardy Clause prohibits a sentence increase upon retrial "when the defendant has

_____

[2] *Pearce* placed sharp limitations on resentencing in such cases, requiring the sentencing judge to provide reasons for the increased sentence based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id*. at 726. Subsequent cases have limited *Pearce*'s presumption of vindictiveness to circumstances in which there is a "`reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority," *Smith*, 490 U.S. at 799 (internal citation omitted).

acquired a `legitimate expectation of finality.'" Appellant's Br. at 13; *see also* Appellant's Reply Br. at 11-13. For its part, the government devotes much of its brief to rebutting Olivares' assertion that he has acquired a legitimate expectation of finality. *See, e.g.*, Appellee's Br. at 5-8. But, as we explain below, expectations of finality, legitimate or otherwise, have nothing to do with this case.

### III.

We have looked to whether a defendant has acquired a legitimate expectation of finality when determining whether a subsequent increase in sentence for an *un*vacated conviction constitutes multiple punishments for the same offense, which may violate the Double Jeopardy Clause. *See, e.g.*, *United States* v. *Bello*, 767 U.S. 1065, 1070 (1985) (discussing *United States* v. *DiFrancesco*, 449 U.S. 117, 138-39 (1980)). *But cf. Thomas*, 491 U.S. at 381 ("Our cases establish that in the multiple punishment context [the interest protected by the Double Jeopardy Clause] is `limited to ensuring that the total punishment did not exceed that authorized by the legislature.'") (quoting *United States* v. *Halper*, 490 U.S. 435, 450 (1989)) (citations omitted).

In *United States* v. *Silvers*, 90 F.3d 95 (4th Cir. 1996), we addressed whether the district court could increase sentences on counts for which the original sentences had been fully served in an effort to make the defendant's total sentence the same as it had been before another count was vacated. We held that by serving the sentences in full for these unvacated counts, the defendant had acquired a "legitimate expectation of finality" in those sentences, and the district court could not, consistent with the Double Jeopardy Clause, increase those sentences. *See id.* at 101.

Our holding in *Silvers* did not contradict the Supreme Court's admonition in *Pearce* that "the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed on *reconviction*," *Pearce*, 395 U.S. at 719 (emphasis added), for the obvious reason that *Silvers* did not involve vacation of the original conviction followed by retrial and reconviction.

4

Nevertheless, Olivares relies on *Silvers*, arguing that "[f]or double jeopardy purposes, the analysis does not hinge on whether the sentence or punishment was vacated." Appellant's Br. at 22-23. As evidence for this assertion, he quotes *United States* v. *Smith*, 115 F.3d 241, 246 (4th Cir. 1997), but does so completely out of context. *See* Appellant's Br. at 21-22, 23 n.10. We did say that "[n]o doubt exists that under the court's decision in *Silvers* if a defendant has fully discharged his sentence pertaining to certain counts, he may not be resentenced on those counts," *Smith*, 115 F.3d at 246. But quite obviously we referred only to *un*vacated counts; only such counts were at issue in *Smith* and *Silvers*. Furthermore, a more broad reading would conflict with *Pearce*, as we have already explained.[3]

Finally, Olivares insists that the district court's reasoning (and hence ours) would lead to "absurd results." Appellant's Br. at 21 n.9, 23. He asks us to assume hypothetically that we remand on a technical issue for retrial and that in the meantime, Olivares has fully served his sentence. He opines that the district court could then sentence him to yet another prison term. True, on remand the district court could sentence him to any legally authorized punishment. *See Pearce*, 395 U.S. at 720; *see also Thomas*, 491 U.S. at 381. Olivares apparently forgets that "punishment already exacted must be fully `credited' in imposing sentence upon a new conviction for the same offense," *Pearce*, 395 U.S. at 719-20 (footnote omitted). He also forgets that Due Process, and not Double Jeopardy, is the principal protection in this context.

In summary, we inquire into whether a defendant has acquired a

_____

[3] Additionally, Olivares misunderstands our decision in *United States* v. *Hillary*, 106 F.3d 1170 (4th Cir. 1997), claiming that we "indicate[d] that the important consideration for double jeopardy is . . . [whether] the sentence was fully served before any appeal was taken or before any sentence was vacated," Appellant's Br. at 23 n.10. Rather, in *Hillary*, we worried that the "active portion of Hillary's drug sentence" was going to end in 10 days. *Hillary*, 106 F.3d at 1173. We wanted to avoid the difficult issue of whether Hillary's sentence could be increased after that point, and, accordingly, directed that his "resentencing take place as soon as is just and practical." *Id*. Once again, we addressed only unvacated convictions.

5

legitimate expectation of finality in his sentence only when we analyze whether an increase in the sentence relating to an unvacated conviction violates the Double Jeopardy Clause. Because Olivares succeeded in getting his original conviction vacated (on grounds other than insufficiency of the evidence), the Double Jeopardy Clause is not violated by the second magistrate judge imposing a greater (though still lawful) sentence.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

### AFFIRMED

MICHAEL, Circuit Judge, concurring in the judgment:

I agree with the majority that even though Olivares had fully discharged the sentence imposed after his first trial and conviction, the Double Jeopardy Clause did not bar the magistrate judge from imposing a harsher sentence following Olivares's retrial and reconviction. However, I reach this conclusion by applying the "legitimate expectation of finality" test introduced by the Supreme Court in *United States v. DiFrancesco*, 449 U.S. 117 (1980), and first applied by our court in *United States v. Bello*, 767 F.2d 1065 (4th Cir. 1985). Unlike the majority, I do not read *North Carolina v. Pearce*, 395 U.S. 711 (1969), as holding that the Double Jeopardy Clause is never implicated when a defendant is reconvicted and resentenced after his original conviction has been vacated. The two defendants in *Pearce* were in the early stages of their sentences when they succeeded in having their convictions set aside: one defendant was two and one-half years into a ten-year sentence, and the other was a few years into a twelve- to fifteen-year sentence. *See id.* at 713-14. The *Pearce* Court was thus not presented with (and did not decide) the question of whether imposing a harsher sentence after the original sentence has been completely discharged violates the Double Jeopardy Clause. As a result, we can only determine whether Olivares's harsher second sentence subjected him to multiple punishments for the same offense by asking if he "had a legitimate expectation of finality as to the severity of his [first] sentence." *Bello*, 767 F.2d at 1070. Olivares wanted a second

6

chance to gain an acquittal. To get that chance, he appealed to have his first judgment of conviction, which included his sentence, set aside. In choosing that course, Olivares had to understand that things could again go wrong at a second trial; if they did, he had no guarantee that his sentence would not be increased. In other words, by appealing his first judgment of conviction, Olivares "by his own hand[ ] defeated his expectation of finality [in the first sentence], and the Double Jeopardy Clause, which guards against Government oppression, does not relieve [him] from the consequences of his voluntary choice." *United States v. Silvers*, 90 F.3d 95, 100 (4th Cir. 1996) (citation and internal quotations omitted). I therefore concur in the judgment affirming the district court.

7