The STATE of Ohio, Appellee,

v.

CRAGO, Appellant.

[Cite as *State v. Crago* (1994), 93 Ohio App.3d 621.]

No. 92AP–542.

Court of Appeals of Ohio,
Franklin County.

Decided March 1, 1994.

*Michael Miller*, Franklin County Prosecuting Attorney, *Joyce Anderson* and *Susan E. Day*, Assistant Prosecuting Attorneys, for appellee.

*Bodiker & Holland* and *David H. Bodiker; Phillip Churchill* and *Allen V. Adair*, Franklin County Assistant Public Defenders, for appellant.

DESHLER, Judge.

This is an appeal by defendant, Martin Douglas Crago, from a judgment of conviction and sentence of life imprisonment entered by the Franklin County Court of Common Pleas following a jury trial in which defendant was found guilty of aggravated murder.

On January 24, 1986, defendant was indicted on three counts of aggravated murder, each with death penalty specifications, one count of aggravated robbery and one count of aggravated kidnapping. Count one of the indictment alleged that defendant purposely committed murder with prior calculation and design. Count two alleged that defendant committed aggravated murder during the commission of an aggravated robbery. Count three alleged that defendant

committed murder during the commission of a kidnapping. The counts charging robbery and kidnapping both carried firearm specifications.

The charges from the indictment arose from the shooting death of Edward Murray, an employee of Snap-on-Tool, Inc. Murray sold Snap-on-Tool products to mechanics, operating out of a delivery van which he set up as a mobile showroom. It was undisputed that on January 17, 1986, defendant shot Murray. On that date, defendant had contacted Murray by telephone and arranged to meet with him at the Great Southern Shopping Center, located in Franklin County. Defendant and an accomplice, Mark Loel, planned to rob Murray of the tools in the van. When Murray arrived at the shopping center, defendant entered the van and initiated a conversation with Murray. Defendant was carrying a handgun in his pocket. While in the van, defendant shot Murray twice in the head.

Following the shooting, defendant drove the van to a site in Pickaway County, where he unloaded the tools. Defendant then drove the van to a rural location in Pickaway County, where he abandoned the van and the victim, who was still alive. In the late afternoon of January 18, 1986, the van and Murray were discovered by a nearby resident. Murray was transported to a hospital, where he died later that day.

Defendant was arrested on January 21, 1986. At the time of his arrest, defendant made two statements to authorities in which he confessed to the shooting of Murray. Defendant was subsequently indicted on one other count of aggravated robbery, unrelated to the incident involving Murray. More specifically, the subsequent count involved the robbery of David Pratt, an independent owner-operator of a Mac–Tool truck, which occurred three days prior to the killing of Murray.

The original trial of this matter was set for August 1986. At the commencement of trial, the state dismissed the first count of the indictment involving the killing of Murray, *i.e.*, aggravated murder with prior calculation and design. The counts of the indictment were subsequently renumbered. The court also, upon the motion of defense counsel, consolidated the count involving the aggravated robbery of Pratt with the other counts involving Murray.

During opening statements, defense counsel informed the jury that defendant was not maintaining his innocence. Specifically, defense counsel stated during opening statements that defendant was guilty of the aggravated robberies, the offense of kidnapping and that defendant had caused the death of Murray. Counsel told the jury, however, that the matter for their determination was "whether this is a capital murder case or a murder case."

The jury returned verdicts finding defendant guilty of aggravated robbery in the incident involving Pratt, and guilty of both the aggravated robbery and kidnapping of Murray. The jury found defendant not guilty of aggravated murder during the commission of a kidnapping, but guilty of the lesser included offense of involuntary manslaughter. The jury was unable to reach a verdict on the count of aggravated murder during the commission of an aggravated robbery. The trial court declared a mistrial as to that count and dismissed the jury. The trial court sentenced defendant to serve consecutive terms of ten to twenty-five years on each of the four convictions as well as three additional years for use of a firearm, to be served consecutively to the other sentences.

Defendant filed a timely notice of appeal from the convictions and sentence. In *State v. Crago* (Aug. 2, 1988), Franklin App. Nos. 86AP–945 and 86AP–946, unreported, 1988 WL 81833, this court affirmed the decision of the trial court.

The state subsequently sought to retry defendant on the remaining count for aggravated murder committed during the commission of aggravated robbery which had resulted in a mistrial. On February 19, 1987, defendant filed a motion to dismiss the remaining count on the basis of double jeopardy. Specifically, defendant contended that the two counts of aggravated murder on which he was previously brought to trial were based upon, and charged, the same conduct. Defendant further asserted that even if retrial of the remaining count was permitted, the doctrine of collateral estoppel barred relitigation between the parties of the issue whether the death was the result of a purposeful killing. The trial court overruled defendant's motion, concluding that the jury's deadlock as to the murder-robbery count, along with the return of a lesser included verdict concerning the murder-kidnapping count, indicated that the jury decided the murder-kidnapping count "on some issue other than purpose to kill."

Defendant filed an appeal from the judgment of the trial court overruling defendant's motion to dismiss. In *State v. Crago* (Sept. 22, 1988), Franklin App. No. 87AP–394, unreported 1988 WL 99349, ("*Crago I* "), this court affirmed in part and reversed in part the judgment of the trial court. This court's opinion rejected defendant's double jeopardy/collateral estoppel arguments, except to the extent that upon remand, the trial court was instructed to strike the third specification (alleging that the murder was committed during the course of the kidnapping) from the indictment.

Defendant appealed this court's decision to the Ohio Supreme Court, which granted leave to appeal. Following oral argument, the court requested that the parties brief the issue of "whether *denial* of a motion to dismiss a charge on the basis of double jeopardy is a final appealable order in accordance with the criteria set forth in R.C. 2505.02." *State v. Crago* (1990), 48 Ohio St.3d 708, 550 N.E.2d 480. In *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353, paragraph one

of the syllabus, certiorari denied (1991), 499 U.S. ——, 111 S.Ct. 1399, 113 L.Ed.2d 454, the court held that "[t]he overruling of a motion to dismiss on the ground of double jeopardy is not a final appealable order." Accordingly, the court held that "appellant's claims of double jeopardy were never properly before the court of appeals and, consequently, we vacate the judgment of the appellate court." *Id.*, 53 Ohio St.3d at 245, 559 N.E.2d at 1355–1356. In light of the procedural disposition of the case, the court determined that "it is not now necessary for this court to rule on appellant's claim that his retrial is prohibited." *Id.* Defendant filed a motion for rehearing which was subsequently overruled. *State v. Crago* (1990), 55 Ohio St.3d 706, 563 N.E.2d 301.

On September 10, 1991, defendant filed an original action with this court requesting that a writ of prohibition be issued ordering respondent, the trial court, to exercise no further jurisdiction regarding defendant's trial. Defendant alleged that he had no adequate remedy in the ordinary course of law by way of his double jeopardy claims before trial. The respondent filed a motion to dismiss pursuant to Civ.R. 12(B)(6). The matter was referred to a referee of this court who recommended that this court grant the motion to dismiss on the basis of *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, overruled on other grounds in *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353, in which the Ohio Supreme Court held that "prohibition does not lie to test a claim of double jeopardy, because such claim is not of a jurisdictional nature." *Thomas*, 61 Ohio St.2d at 257, 15 O.O.3d at 264, 400 N.E.2d at 901. By decision rendered on December 3, 1991, this court adopted the recommendation of the referee and sustained the motion to dismiss. *State ex rel. Crago v. Thompson* (Dec. 3, 1991), Franklin App. No. 91AP–1004, unreported.

In December 1991, defendant was retried before a jury on the remaining count of aggravated murder committed during the commission of an aggravated robbery. On December 20, 1991, the jury found defendant guilty of aggravated murder, and further found defendant guilty of the two specifications. Following a mitigation hearing, the jury returned a recommendation of life imprisonment with parole eligibility after thirty years.

By judgment entry filed March 23, 1992, the trial court accepted the jury's recommendation and sentenced defendant to life imprisonment with parole eligibility after thirty years. The court merged the prior involuntary manslaughter conviction with the aggravated murder count. The court further ordered that the sentence imposed for the aggravated murder count be served concurrently to the terms previously imposed for aggravated robbery and kidnapping in the 1986 trial.

On appeal, defendant asserts nine assignments of error:

"First Assignment of Error

"Retrial of the defendant on the charge of aggravated murder was barred by the doctrine of collateral estoppel, embodied in the double jeopardy clauses of the state and federal constitutions. The issue whether the homicide was purposeful, having been resolved in defendant's favor at the first trial, could not be relitigated between these parties.

"Second Assignment of Error

"Because of his previous conviction of one of two homicide charges arising from the death of a single victim, the double jeopardy clauses of the state and federal constitution barred retrial of appellant for aggravated murder with death penalty specifications or on any lesser homicide offense.

"Third Assignment of Error

"Appellant has been denied the protection of the Fifth Amendment guarantee that he not face trial a second time for the same offense. When a state provides a mechanism for appellate review of trial court judgments in criminal cases, the Due Process Clause of the Fourteenth Amendment, and the due course of law guaranteed by the Ohio Constitution, require that such review extend to motions seeking dismissal of charges on the basis of the double jeopardy clauses of the state and federal constitutions.

"Fourth Assignment of Error

"In any capital case the defendant should be permitted to conduct and pursue a comprehensive voir dire examination of all prospective jurors, which examination should include the ability to conduct a general voir dire of the panel, as well as of the individual members of the panel, and the arbitrary imposition of time restrictions and other limitations by the court, solely for expediency, deprives the defendant of due process, a fair trial, and a fair and impartial jury.

"Fifth Assignment of Error

"Use of evidence of other acts of wrongdoing must be strictly construed against admissibility and must fit the exceptions to the common law, codified in Section 2945.59, Revised Code, and Evid.R. 404(B), so that in a (second) prosecution for aggravated murder, where the prosecution has two full statements from the defendant, previously found to be admissible, which admissibility was affirmed on appeal, in which the defendant identified himself as the perpetrator of the murder charged, and admitted committing all of the acts in question in the case, and the only issue raised by the defense, in either of the trials, and remaining to be decided, was whether the defendant had the requisite intent to cause the death of the victim, the use of other, and even similar acts of robbery or aggravated robbery, is simply without merit or purpose of any kind, and highly prejudicial to the rights of the defendant.

"Sixth Assignment of Error

"The court erroneously refused to instruct on the lesser included offense of voluntary manslaughter.

"Seventh Assignment of Error

"The prosecution committed reversal error by engaging in improper argument, by misquoting scripture and by urging the jury to consider revenge and retribution at the penalty phase of the trial.

"Eighth Assignment of Error

"The court erroneously refused to instruct the jury that residual doubt could be considered as a mitigating factor at the penalty phase of the trial.

"Ninth Assignment of Error

"The court erroneously refused to instruct the jury concerning appellant's eligibility for parole if sentenced to serve life in prison with the possibility of parole after either twenty or thirty full years."

We will address defendant's first and second assignments of error in inverse order.

Under the second assignment of error, defendant asserts that, due to his previous conviction in the first trial of one of two homicide charges arising from the death of a single victim, retrial of the remaining aggravated murder count was barred under the double jeopardy provisions of the state and federal Constitutions. Defendant contends that the involuntary manslaughter verdict returned in the first trial concluded litigation as to his degree of culpability in the death of the victim and that, while defendant could have been contemporaneously charged with multiple counts arising from a single death, he could ultimately be convicted of and punished for only one offense, *i.e.*, the sentence imposed for involuntary manslaughter. Defendant asserts that any further prosecution was a successive prosecution for criminal conduct on which his culpability had been adjudicated and punishment imposed. We disagree.

The Fifth Amendment to the United States Constitution provides in part that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." The Fifth Amendment guarantee against double jeopardy consists of three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–2077, 23 L.Ed.2d 656, 664–665.

■ We will first address defendant's contention that the two counts of aggravated murder, set forth in the original indictment, charged the same offense, and therefore retrial on the count of aggravated murder in the course of a robbery constituted a trial for the same offense of which defendant had been previously acquitted at his first trial.

Initially, we note that this argument was addressed by this court in *Crago I*. While *Crago I* may not be binding upon this court,[1] we nonetheless agree with the holding. In *Crago I, supra*, at 10–11, this court held that:

"[M]urder during the course of more than one felony described in R.C. 2903.01(B) constitutes distinct offenses. Cf. *State v. Strozier* (1972), 32 Ohio St.2d 62 [61 O.O.2d 303, 290 N.E.2d 177], syllabus (interpreting the predecessor to R.C. 2903.01[B], former R.C. 2901.01). As such, contrary to defendant's assertions on appeal, the statute does not contemplate a transactional view of aggravated murder where there is but one purpose during the course of several felonies. Rather, the statute identifies distinct offenses during which the state must establish the accused possessed the requisite culpable mental state." (Footnote omitted.)

As noted above, this court in *Crago I* relied upon *State v. Strozier* (1972), 32 Ohio St.2d 62, 61 O.O.2d 303, 290 N.E.2d 177. The syllabus of *Strozier* provides:

"The killing of another purposely (1) in perpetrating or attempting to perpetrate robbery, (2) or a rape, (3) or of deliberate and premeditated malice are separate and distinct offenses of first degree murder, and, under R.C. 2901.01, may properly be charged in separate counts of an indictment. * * * "

The court in *Strozier* followed and approved *State v. Ferguson* (1964), 175 Ohio St. 390, 25 O.O.2d 383, 195 N.E.2d 794. In *Ferguson*, the court addressed the issue whether the killing of another purposely in perpetrating a robbery was a distinct offense from the killing of the same person purposely and of deliberate and premeditated malice under former R.C. 2901.01 (the predecessor to R.C. 2903.01). The court in *Ferguson* held that:

"Murder committed in the perpetration of a robbery and murder committed with deliberate and premeditated malice are not one and the same offense, even though the victim is one and the same person. The test to be applied here is: Are the facts necessary to secure a conviction under one count of the indictment sufficient to secure a conviction under the other count. If the facts which would

---

1. As previously noted, in *State v. Crago* (1990), 53 Ohio St.3d 243, 245, 559 N.E.2d 1353, 1355–1356, the Ohio Supreme Court, in holding that the overruling of a motion to dismiss on the basis of double jeopardy is not a final appealable order, further determined that "appellant's claims of double jeopardy were never properly before the court of appeals and, consequently, we vacate the judgment of the appellate court."

support a conviction under one count would not necessarily support a conviction under the other count, then the offenses charged are separate and distinct crimes, although the offenses charged may have been committed by the same act or acts.

"* * *

"Under the state and federal Constitutions, no person shall be twice put in jeopardy for the same offense. Evidence which would be sufficient to sustain a conviction for unlawfully and purposely killing another while perpetrating or attempting to perpetrate a robbery would not necessarily be sufficient to sustain a conviction for unlawfully, purposely and of deliberate and premeditated malice killing another. A single act may constitute several offenses by virtue of separate statutes. * * *" *Ferguson, supra,* at 394–396, 25 O.O.2d at 385–386, 195 N.E.2d at 796–798.

Applying the principles of *Strozier* and *Ferguson,* although there is but one homicide, the two counts of aggravated murder constitute separate offenses. Thus, proof of the underlying felony (*i.e.,* in the instant case proof of a kidnapping or proof of a robbery) is an element of aggravated murder under R.C. 2903.01(B), and the particular facts which would support a conviction for purposely causing the death of another during the commission of a kidnapping would not necessarily support a conviction for purposely causing the death of another during the commission of a robbery. *Ferguson, supra,* at 394, 25 O.O.2d at 385, 195 N.E.2d at 796–797.

Defendant correctly points out that he could not have been subjected to multiple sentences for separate counts of aggravated murder based upon double jeopardy principles and Ohio's multiple offense statute (R.C. 2941.25). See, *e.g., State v. Huertas* (1990), 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1065–1066, certiorari denied (1990), 498 U.S. 336, 111 S.Ct. 805, 112 L.Ed.2d 837 (improper for trial court under Double Jeopardy Clause to convict and sentence defendant on two counts of aggravated murder for a single killing and, thus, following remand, defendant would be given only single life sentence for aggravated murder offense); *State v. Osborne* (1976), 49 Ohio St.2d 135, 144, 3 O.O.3d 79, 83, 359 N.E.2d 78, 85, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1155 (where defendant was found guilty of two counts of aggravated murder, trial court properly set aside one of aggravated murder counts and sentenced defendant on, only one count in compliance with R.C. 2941.25).

In *Crago I,* defendant raised the specter that he could be subject to multiple punishments if he was retried on the remaining count of aggravated murder. This court found defendant's argument to be premature, noting that "[d]efendant cannot be punished for aggravated murder until he is found guilty of that offense." *Crago I, supra,* at 6. In support, this court cited *Ohio v. Johnson*

(1984), 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 434, for the proposition that " '[w]hile the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [defendant] for such multiple offenses in a single prosecution.' " *Id.*

In the context of protection against multiple punishments under the Double Jeopardy Clause, "[t]he purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas* (1989), 491 U.S. 376, 381, 109 S.Ct. 2522, 2525–526, 105 L.Ed.2d 322, 331, rehearing denied (1988), 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627. In the present case, the issue of multiple punishments was resolved when the trial court, during sentencing following retrial on the remaining aggravated murder count, determined that "[t]he sentence previously imposed by this Court upon the defendant as to count two by entry filed September 22, 1986, is hereby set aside as count two has merged with count one * * *."

The main impediment to defendant's double jeopardy claim is not that the counts of aggravated murder are distinct offenses; rather, defendant's claim fails because his retrial was simply a continuation of his initial jeopardy and did not constitute a successive prosecution.

Defendant contends, citing *Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187, that it is undisputed that had he been brought to trial on a single count of aggravated murder, he could not have been reindicted for the same offense, even under a different theory of culpability, once he had been found guilty of a lesser included offense. Further, relying upon *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, defendant maintains that had his first trial resulted in a verdict which was subsequently reversed because the evidence was insufficient as a matter of law to sustain a conviction, he could not have been retried. Defendant contends that the situation in the present case is analogous to the appellate reversal in *Burks*.

The cases cited by defendant do not address the facts of defendant's case, however, since defendant was initially charged under a single indictment alleging alternative theories of aggravated murder. Further, while the jury found defendant not guilty of aggravated murder during the commission of a kidnapping (but guilty of the lesser included offense of involuntary manslaughter), the jury was deadlocked as to the count charging aggravated murder during the commission of an aggravated robbery.

The United States Supreme Court has consistently held that a retrial following a mistrial because of a deadlocked jury does not violate double jeopardy. In *Richardson v. United States* (1984), 468 U.S. 317, 325–326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242, 251, the court stated:

"[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. * * * Since jeopardy attached here when the jury was sworn, * * * petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy.

"[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which the petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and the jeopardy does not terminate when the jury is discharged because it is unable to agree. Regardless of the sufficiency of the evidence at petitioner's first trial, he has no valid double jeopardy claim to prevent his retrial." (Citations and footnotes omitted.)

In *Richardson,* the defendant was indicted on two counts of distributing a controlled substance and one count of conspiracy to distribute a controlled substance. The jury acquitted the defendant of one count but was unable to reach a verdict as to the two remaining counts. The trial court declared a mistrial as to the two remaining counts and scheduled a retrial. The trial court further denied the defendant's motion to dismiss on double jeopardy grounds.

On appeal to the Supreme Court, the defendant, relying on *Burks,* asserted that if the government failed to introduce sufficient evidence to establish guilt beyond a reasonable doubt at the first trial, then he could not be retried again following a declaration of a mistrial because of a hung jury. The Supreme Court rejected this argument. The court, in discussing the long line of cases holding that a retrial following a "hung jury" does not violate double jeopardy concerns, stated:

"We are entirely unwilling to uproot this settled line of cases by extending the reasoning of *Burks,* which arose out of an appellate finding of insufficiency of evidence to convict following a jury verdict of guilty, to a situation where the jury is unable to agree on a verdict. * * *

" * * * *

"We think that the principles governing our decision in *Burks,* and the principles governing our decisions in the hung jury cases, are readily reconciled when we recognize that the protection of the Double Jeopardy Clause by its

terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy. * * *" (Citations omitted.) *Richardson, supra,* 468 U.S. at 324–325, 104 S.Ct. at 3085–3086, 82 L.Ed.2d at 250–251.

In the present case, as in *Richardson,* jeopardy did not terminate when the jury was discharged because of its inability to agree. Thus, defendant was not subject to a successive prosecution at his retrial.

The distinction between "sequential" jeopardy and "continuing" jeopardy was discussed by the court in *Mauk v. State* (1992), 91 Md.App. 456, 605 A.2d 157. In *Mauk,* the defendant was charged in a multi-count indictment with one count of possession of marijuana with intent to distribute and one count of simple possession of marijuana. The jury returned a guilty verdict on the charge of possession of marijuana but was deadlocked as to the charge of possession of marijuana with the intent to distribute. The trial court set a new trial date for the count resulting in the mistrial and denied defendant's motion to dismiss on the grounds of double jeopardy. The defendant filed an interlocutory appeal.

On appeal, the defendant asserted that simple "possession" and "possession with intent to distribute" are the same offense within the contemplation of double jeopardy law. The appellate court agreed with defendant's contention but rejected his further premise that retrial for possession with intent to distribute would be to place him twice in jeopardy for the same offense.

The court in *Mauk* noted that defendant's primary reliance on *Brown, supra,* was flawed because *Brown* arose in the situational context of sequential jeopardy, *i.e.,* in *Brown,* "[t]he critical sequence was that the defendant was initially in jeopardy for the lesser, included offense and that that jeopardy terminated with his conviction *before* the second jeopardy for the greater, inclusive offense was even initiated." (Emphasis added and footnote omitted.) *Mauk, supra,* 91 Md.App. at 474–475, 605 A.2d at 166. The court in *Mauk* noted that had the defendant in the case before it been tried and convicted for simple possession alone before ever going to trial on the charge of possession with intent to distribute, the later prosecution would be constitutionally barred by a plea of former conviction. The court noted, however, that:

"The appellant's Waterloo is that there has been and still is only one jeopardy with respect to the charge of possession with intent to distribute. That is the jeopardy that began on September 20, 1990, simultaneously with the jeopardy for simple possession. The jeopardies for both began in the instant the jury was sworn in that case. Although the jeopardy on the simple possession charge terminated when the jury returned its verdict of guilty, the parallel jeopardy on the charge of possession with intent to distribute has, albeit interrupted in its course, never been terminated but continues unabated to this very day. When the appellant's retrial on that charge, necessitated by the earlier declaration of

mistrial because of the hung jury, commences, therefore, it will not launch a new and subsequent jeopardy. The original and continuing jeopardy still abides.

"In the context of a multi-count indictment or a multi-indictment trial involving related offenses, multiple jeopardies for different manifestations of the 'same offense' routinely begin simultaneously and run along parallel tracks. Clearly, no double jeopardy problem is involved. In a multi-count indictment for armed robbery, for instance, simultaneously jeopardies will be suffered for 1) armed robbery, 2) simple robbery, 3) theft, and 4) assault and battery. In a literal sense, this involves not simply double jeopardy or even triple jeopardy but quadruple jeopardy for the 'same offense,' except that that is not the way we count. The reason there is no impediment to these apparently multiple parallel jeopardies is that 'double jeopardy' essentially means 'former jeopardy' and is primarily concerned, therefore, with regulating subsequent and sequential jeopardies. In the fundamentally different environment of simultaneous jeopardy, its only concern is with the avoidance of multiple punishment and that is a concern that is not addressed until the time for sentencing.

"While these routinely simultaneous jeopardies are legitimately proceeding along their parallel tracks, the termination of jeopardy on one or more of the tracks—through the declaration of a mistrial, the entry of a *nol pros*, the granting of a directed verdict of acquittal, the rendering of a verdict of acquittal, the rendering of a verdict of conviction, etc.—has no carryover effect on the other jeopardies still proceeding along their own tracks. Double jeopardy, limited as it is to a plea in bar, cannot be interposed to bar the attachment of jeopardy that has already attached. As a plea in bar, it simply comes too late. * * * " *Mauk, supra,* 91 Md.App. at 476–477, 605 A.2d at 167.

We further note that in *Crago I,* this court also addressed and rejected defendant's contention that his retrial for aggravated murder under count one of the indictment, after the first trial was aborted due to a hung jury, would subject him to double jeopardy. Addressing defendant's argument, this court noted that "[s]eriatim prosecutions, against which the Fifth Amendment protects, is simply not an issue, for purposes of double jeopardy analysis, when a jury is able to conclude some charges but is unable to agree as to all charges in one trial." *Crago I, supra,* at 8. Nothing raised by defendant in the current appeal persuades this court to reach a contrary determination.

Finally, in support of his contention that double jeopardy barred prosecution in the second trial for aggravated murder, defendant relies in part upon *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, overruled (1993), 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556. In *Grady,* the majority held:

"We have long held, see *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), that the Double Jeopardy Clause of the

Fifth Amendment prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not 'requir[e] proof of a fact which the other does not.' In *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution. Today we adopt the suggestion set forth in *Vitale*. We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (Footnotes omitted.) *Id.*, 495 U.S. at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557.

Defendant contends that, in applying the principles of *Grady* to the facts of the instant case, prosecution at the second trial on the remaining count of aggravated murder necessarily involved proof of conduct the defendant was already convicted of, namely responsibility for the death of the victim and proof that he committed the crime of aggravated robbery.

Subsequent to oral argument in the present case, the United States Supreme Court, in *United States v. Dixon* (1993), 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556, overruled *Grady*.[2] In *Dixon*, Justice Scalia, writing for the majority, stated:

"We have concluded * * * that *Grady* must be overruled. Unlike *Blockburger* analysis, whose definition of what prevents two crimes from being the 'same offense,' U.S. Const., Amdt. 5, has deep historical roots and has been accepted in numerous precedents of this Court, *Grady* lacks constitutional roots. The 'same-conduct' rule it announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy. * * *" *Id.*, 509 U.S. at ——, 113 S.Ct. at 2860, 125 L.Ed.2d at 573.

Accordingly, the issue of whether defendant's subsequent prosecution must satisfy a "same-conduct" test to avoid the double jeopardy bar is not before this court based upon the overruling of *Grady*.

---

**2.** Even assuming that *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, had not been overruled, we would find that case inapplicable to the present case. *Grady* did not involve a situation where a subsequent trial was held on an unresolved count because the jury deadlocked on that count. See *Apostoledes v. State* (1991), 323 Md. 456, 467–468, 593 A.2d 1117, 1123. In fact, in *Grady*, the court noted that "[w]ith adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question." *Grady, supra*, 495 U.S. at 524, 110 S.Ct. at 2095, 109 L.Ed.2d at 566.

Defendant's second assignment of error is without merit and is overruled.

■ Defendant's first assignment of error raises the contention that the retrial of defendant on the charge of aggravated murder was barred by the doctrine of collateral estoppel. Defendant maintains that the issue of whether the homicide was purposely committed was resolved in the first trial and thus could not have been relitigated during the second trial. Specifically, defendant argues that the jury in defendant's first trial, by finding defendant not guilty of aggravated murder during the commission of a kidnapping, but instead guilty of the lesser included offense of involuntary manslaughter, necessarily concluded that defendant did not purposely cause the death of the victim. Further, defendant asserts, nothing in the record suggests a basis by which the jury might have concluded that the killing was not purposeful as to the kidnapping but was purposeful as the aggravated robbery.

■ The doctrine of collateral estoppel is embodied in the constitutional guarantee against double jeopardy. *Ashe v. Swenson* (1970), 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476. In *Ashe,* the United States Supreme Court defined the concept in the following manner:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when a issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * * " *Id.,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

One federal court has noted the following concerning the application of the doctrine of collateral estoppel in a criminal case:

" * * * In order to apply * * * collateral estoppel principles in criminal cases, the court must examine the record of the prior proceedings and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant is seeking to foreclose from consideration. The defendant carries the burden of proving that the previous jury necessarily decided the issue that he seeks to foreclose in his favor. * * *

"When there is more than one possible reason for the first jury's verdict, and the court cannot say for certain which reason the jury grounded its verdict upon, a second prosecution using evidence of actions upon which the defendant has been acquitted is not prohibited. * * * " *United States v. White* (D.D.C.1990), 757 F.Supp. 45, 47, affirmed (C.A.D.C.1991), 936 F.2d 1326.

Thus, the issue presented is whether the jury in defendant's first trial could have grounded its verdict upon an issue other than defendant's purpose to kill.

As with the prior assignment of error concerning defendant's claim of double jeopardy, the issue of collateral estoppel was also addressed by this court in *Crago I, supra.* As previously noted, this court in *Crago I* held that R.C. 2903.01(B) "identifies distinct offenses during which the state must establish the accused possessed the requisite culpable mental state." *Id.* at 10–11. In addressing defendant's collateral estoppel argument in *Crago I*, this court stated:

"[U]pon an independent review of the record, it is clear that this view of aggravated murder pursuant to R.C. 2903.01(B) was the view under which the jury considered the evidence. First, Counts 1 and 2 of the indictment specify that the killing occurred either during the course of the aggravated robbery or during the course of the kidnapping. Second, the trial court specifically instructed the jury on the element of purposefulness first in the context of the kidnapping and then in relation to the aggravated burglary. Third, the verdict forms submitted to the jury specified that each of the aggravated murder counts was a distinct offense to be found by the jury. Finally, the relevant questions from the jurors during deliberations indicate that the jury focused on events which transpired either during the kidnapping or during the robbery, but are otherwise somewhat equivocal.

"Given the state of the record, we are unable to conclude, as defendant requests, that the jury's verdict regarding Count 2 of the indictment forecloses relitigation, because of collateral estoppel, as to Count 1. *Clearly, a rational jury could, and this jury did, conclude that defendant did not purposely cause the victim's death during the course of the kidnapping, yet fail to resolve the distinct issue of whether defendant purposely caused the victim's death during the course of the aggravated robbery.* Although defendant makes much of the fact that he was convicted of involuntary manslaughter, that issue too was properly framed in terms of the underlying felony of kidnapping. Simply stated, under the facts of this case, the jury found only that defendant did not possess the requisite purposefulness in causing Mr. Murray's death during the course of the kidnapping, but was unable to conclude that issue in the context of the aggravated robbery." (Emphasis added and footnote omitted.) *Id.* at 10–12.

In order to determine whether the jury could have rationally grounded its verdict on an issue other than purpose to kill, we must " 'examine the record of a prior proceeding taking into account the pleadings, evidence, charge, and other relevant matter * * *.' " *Ashe, supra,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Upon consideration of the record, we cannot conclude that defendant has carried his burden of showing that the jury, by acquitting defendant of felony murder in the course of a kidnapping, necessarily concluded that he lacked a purpose to kill.

At defendant's first trial, both the jury instructions and the jury verdict forms required separate findings by the jury as to the aggravated murder counts. We note that, during jury deliberations, the jury sent a question to the trial court regarding whether the kidnapping occurred when the victim was lured from his residence or when he was removed from the parking lot of the shopping center. Assuming that the jury believed that, by luring the victim by deception from his home, the kidnapping was completed before the shooting, the jury could have based the acquittal on a reason other than purpose to kill, while being unable to agree whether defendant purposely killed during the course of a robbery. In other words, in addressing the aggravated murder-kidnapping count, the jury appears to have been concerned about, and may have based the acquittal on, the issue of time (*i.e.,* when the kidnapping occurred), rather than purpose. Thus, the jury may not have viewed the issues of when the kidnapping occurred and whether the defendant formed a purpose to kill as conjunctive in time. The jury could have still concluded, however, in finding defendant guilty of the lesser included offense of involuntary manslaughter, that the death of the victim was the proximate result of the kidnapping, *i.e.,* but for the fact that the victim was lured from his residence, he would not have been subsequently shot.

The fact that the jury did not acquit defendant of aggravated murder in the course of a robbery indicates that purpose to kill was not the determinative issue as to the acquittal on the aggravated murder-kidnapping count. Stated otherwise, had the jury conclusively found that defendant lacked a purpose to kill under the aggravated murder-kidnapping count, it would have also acquitted him of aggravated murder in the course of a robbery; the jury, however, could not agree whether defendant purposely caused the death of Murray during the commission of a robbery. See, *e.g., United States v. Larkin* (C.A.5, 1979), 605 F.2d 1360, 1370, certiorari denied (1980), 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (where jury failed to reach verdict on conspiracy count, but acquitted defendant on substantive counts, court held that collateral estoppel did not bar retrial of conspiracy count because "[n]o rational jury could have absolved Larkin of liability for * * * [the co-defendant's] crimes because of the absence of a conspiracy between the two, while it simultaneously failed to acquit Larkin on the conspiracy charge itself. The jury's verdict *must have rested elsewhere.*") (Emphasis added.); *United States v. Scott* (C.A.D.C.1972), 464 F.2d 832 (fact that jury acquitted defendant on armed robbery count but deadlocked on robbery count indicates that acquittal was not based on finding that defendant was not a robber).

Defendant's first assignment of error is overruled.

Under the third assignment of error, defendant argues that he has been denied protection afforded under the Fifth Amendment because decisions of the

Ohio Supreme Court and this court have left him without the means to have his double jeopardy claims reviewed before standing trial a second time. Specifically, defendant argues that, following his appeal of this court's decision in *Crago I,* the Ohio Supreme Court unexpectedly held that:

"The overruling of a motion to dismiss on the ground of double jeopardy is not a final appealable order. (R.C. 2505.02, construed and applied; *State v. Thomas* [1980], 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, paragraph one of the syllabus, overruled.)" *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353, syllabus.

Defendant argues that the only other remedies available under Ohio law would have been either an action in habeas corpus or prohibition; however, defendant maintains, both of these remedies are foreclosed by the Ohio Supreme Court's decision in *Thomas, supra.*[3] Defendant notes that, despite the holding of *Thomas,* he sought a writ of prohibition from this court, which this court denied on the basis of *Thomas.*[4] Defendant asserts that the Ohio Supreme Court has construed the state statute defining "final appealable orders" in a manner at odds with the Due Process Clause of the Fourteenth Amendment and Article I of the Ohio Constitution.

As already noted, although this court did address defendant's double jeopardy and collateral estoppel arguments in *Crago I,* the Ohio Supreme Court, in holding that the overruling of a motion to dismiss on the basis of double jeopardy is not a final appealable order, further held that defendant's double jeopardy claims were never properly before this court. *State v. Crago* (1990), 53 Ohio St.3d 243, 559 N.E.2d 1353. Further, this court subsequently determined, on the basis of the Ohio Supreme Court's holding in *Thomas,* that prohibition does not lie to test a claim of double jeopardy. In the present assignment of error, defendant essentially asserts that the state of the existing law, as set forth by the Ohio Supreme Court, is in error. It is well settled that an appellate court is "conclusively bound by the decisions of the Supreme Court of Ohio." *Thompson v. Moore* (1943), 72 Ohio App. 539, 541, 27 O.O. 491, 492, 53 N.E.2d 666, 667. Accordingly, we decline defendant's invitation to find that the existing law, by which we are bound, should be reversed or modified.

Defendant's third assignment of error is overruled.

---

3. In *Wilson v. Rogers* (1993), 68 Ohio St.3d 130, 131, 623 N.E.2d 1210, 1211, the Ohio Supreme Court recently reaffirmed that "double jeopardy is not a ground for post-conviction relief in habeas corpus."

4. *State v. Crago* (Dec. 3, 1991), Franklin App. No. 91AP–1004, unreported (memorandum decision).

■ Under the fourth assignment of error, defendant asserts that the trial court erred by not allowing a general *voir dire* of the jury. Defendant notes that, at the outset of the trial, the trial court indicated that it would allow individual *voir dire* of the jury, but would not allow a general *voir dire*. Defendant contends that in a criminal case, a comprehensive *voir dire* of the jury, including questioning of jurors both individually and collectively, is necessary to reveal any juror's preconceived notions that would preclude consideration of crucial mitigating or aggravating factors, cause automatic imposition of the death penalty, or prevent imposition of the death penalty altogether.

■ In general, the purpose of *voir dire* of a prospective juror is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant. *Pavilonis v. Valentine* (1929), 120 Ohio St. 154, 165 N.E. 730, paragraph one of the syllabus. Crim.R. 24(A) permits the court discretion in determining the method of *voir dire* and provides in pertinent part that "[t]he court may permit the attorney for the defendant, or the defendant if appearing pro se, and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination." Generally, "the scope of the examination of prospective jurors is within the discretion of the trial court and the judgment will only be reversed upon a showing that the trial court abused its discretion in restricting the scope of *voir dire*." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 186, 15 OBR 311, 330, 473 N.E.2d 264, 286. The court's discretion has been held to include the decision whether jurors should be questioned collectively or individually. *United States v. Delval* (C.A.5, 1979), 600 F.2d 1098, 1102.

Apart from the general assertion that, because this was a death penalty case, the trial court should have permitted both individual and general *voir dire*, defendant has failed to suggest any prejudice by the manner in which the *voir dire* was conducted. Although the Ohio Supreme Court has held that "sufficient latitude must be afforded in the *voir dire* of prospective jurors in a capital case," *Jenkins, supra*, 15 Ohio St.3d at 186, 15 OBR at 330, 473 N.E.2d at 286, the court has still concluded that the scope of examination is within the discretion of the court. *Id.* See, also, *State v. Coleman* (1989), 45 Ohio St.3d 298, 302–303, 544 N.E.2d 622, 627–629, certiorari denied (1990), 493 U.S. 1051, 110 S.Ct. 855, 107 L.Ed.2d 849; *State v. Mapes* (1985), 19 Ohio St.3d 108, 115, 19 OBR 318, 324, 484 N.E.2d 140, 146–147, certiorari denied (1986), 476 U.S. 1178, 106 S.Ct. 2905, 90 L.Ed.2d 991. We wish to make clear that we do not suggest that the trial court embrace a policy of restricting general questioning. However, and with the benefit of hindsight, the jury in the present case did not recommend that the death penalty be imposed and defendant has demonstrated no abuse of discretion by the trial court.

Defendant's fourth assignment of error is overruled.

■ Under the fifth assignment of error, defendant asserts that the trial court improperly admitted evidence of other acts of wrongdoing by the defendant. Specifically, defendant contends that the testimony of David Pratt and Steve Craft, former tool salesmen who had been contacted by defendant shortly before the victim's death, should have been excluded. Defendant's basic contention is that he admitted in statements to the Pickaway County authorities that he had contacted both of these individuals and, in the case of Pratt, had attempted to rob Pratt at gunpoint. Thus, defendant contends, because he acknowledged that the events had occurred, the issue before the trial court was whether these incidents had any relevance to the case. Defendant asserts that it must be assumed that the state sought to introduce the evidence for purposes other than to show a scheme or intent to commit robbery.

The record indicates that, following objection by defense counsel at trial, the trial court ruled that evidence of the incidents was admissible under Evid.R. 404(B).[5] Prior to the testimony of Pratt and Craft, the trial court gave a limiting instruction concerning the purpose for which the testimony could be admitted.

In *State v. Eaton* (1969), 19 Ohio St.2d 145, 48 O.O.2d 188, 249 N.E.2d 897, a similar issue was addressed by the Ohio Supreme Court. In *Eaton*, the defendant was found guilty of first degree murder resulting from the killing of a gas station attendant. The evidence indicated that when the defendant pulled a gun out of his pocket, the attendant tackled the defendant and the gun discharged, killing the attendant. The defendant maintained that the shooting was accidental. At trial, the state was permitted to introduce evidence that, two days prior to the shooting, the defendant had robbed a gas station attendant at a different service station.

On appeal, the defendant contended that it was prejudicial error to admit evidence of the prior holdup. Defendant asserted that during opening statement by his counsel, it was admitted that the defendant participated in the holdup; thus, the defendant contended, by reason of his admission, testimony by the witness concerning the holdup was sought to produce a prejudiced mental attitude on the part of the jury. The court rejected this argument, holding that:

" * * * We do not believe that defendant has the right to limit the production of proper evidence on the part of the prosecution to any greater extent than the

---

5. Evid.R. 404(B) provides:
   "Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

prosecution has the right to limit the production of proper evidence on the part of the defense. We are of the opinion that either party has the right to conduct its side of the case in the manner it deems best under the proper supervision of the trial court and the applicable statute and case law of Ohio. There is nothing in Section 2945.59, Revised Code, which requires the result contended by defendant." *Id.* at 153–154, 48 O.O.2d at 192, 249 N.E.2d at 903.

Based upon the holding of *Eaton,* we find no error by the trial court in admitting the testimony at issue. See, also, *State v. Thompson* (1988), 46 Ohio App.3d 157, 159, 546 N.E.2d 441, 443 (trial court need not accept defendant's stipulation as to existence of other convictions); *State v. Smith* (1990), 68 Ohio App.3d 692, 695, 589 N.E.2d 454, 456–457.

■ Under the sixth assignment of error, defendant asserts that the trial court erred in failing to instruct on the lesser included offense of voluntary manslaughter.

R.C. 2903.03 provides:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.

"(B) Whoever violates this section is guilty of voluntary manslaughter, an aggravated felony of the first degree."

■ Voluntary manslaughter is an inferior degree of aggravated murder. *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 591–592. Pursuant to R.C. 2903.03, voluntary manslaughter is a single offense that, under certain circumstances, allows a defendant to mitigate a charge of murder to manslaughter. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 617, 590 N.E.2d 261, 263–264. Further, the crime comprises elements which must be proven by the state and mitigating circumstances that the defendant must establish. *Id.* In *Rhodes,* the Ohio Supreme Court held that:

"[A] defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder. The court shall instruct the jury on the offense of voluntary manslaughter if the defendant meets his burden of

production with respect to evidence of one or both of the mitigating circumstances of R.C. 2903.03(A)." (Footnotes omitted.) *Id.* at 620, 590 N.E.2d at 265.

Further, in *Tyler, supra,* 50 Ohio St.3d at 37, 553 N.E.2d at 592, the court held that:

"As with lesser included offenses, a defendant is entitled to an instruction on an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense. * * *

"When the defendant seeks an instruction on voluntary manslaughter as an inferior degree of aggravated murder, 'some evidence of the mitigating circumstance * * * described in R.C. 2903.03 * * *' will satisfy this test and entitle him to the instruction. * * * *" (Citations omitted.)

The evidence in the present case was insufficient to support an instruction on voluntary manslaughter. The record does not indicate that the victim seriously provoked defendant into using deadly force. Further, the evidence indicates that after defendant shot the victim the first time, the victim fell to the ground and defendant then stood over the victim and fired a second shot into the victim's head. Thus, even assuming that defendant lacked a purpose to kill when he fired the first shot, evidence regarding the second shot fails to support defendant's contention that the killing was unintentional and that an instruction on voluntary manslaughter was warranted.

Defendant's sixth assignment of error is without merit and is overruled.

Under his seventh assignment of error, defendant contends that the prosecution engaged in improper closing argument at the penalty phase of the trial. More specifically, defendant argues that the prosecution misquoted Bible scripture and improperly urged the jury to consider revenge and retribution.

In general, the prosecutor is granted some latitude during closing argument. *State v. Maurer* (1984), 15 Ohio St.3d 239, 269, 15 OBR 379, 404–405, 473 N.E.2d 768, 794–795, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728. In determining whether reversal is required due to misstatements by the prosecution, the statements must have been improper and they must have prejudiced substantial rights of the accused. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885.

One of the statements defendant claims to be improper occurred when the prosecution asked the jury to "remember" the victim. The prosecution's remark was apparently in response to closing argument by defense counsel regarding whether the jury should consider mercy toward the defendant. In *State v. Evans* (1992), 63 Ohio St.3d 231, 238, 586 N.E.2d 1042, 1050, certiorari

denied (1992), 506 U.S. ——, 113 S.Ct. 246, 121 L.Ed.2d 179, the court noted that victim impact statements are "no longer precluded *per se*" in light of the Supreme Court's holding in *Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720. In *Payne,* the court held that "[t]he Eighth Amendment erects no *per se* bar prohibiting a capital sentencing jury from considering 'victim impact' evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family, or precluding a prosecutor from arguing such evidence at a capital sentencing hearing." *Id.,* 501 U.S. at ——, 111 S.Ct. at 2599–2600, 115 L.Ed.2d at 724. We find no prejudice to defendant as a result of the prosecution's remark.

Defense counsel further contended at trial that the prosecution attempted to interject non-aggravating circumstances during closing by noting that the defendant, following the shooting, drove the victim to Pickaway County, dragged him out of the van and placed him in a weeded area. The prosecution then stated that "he [defendant] didn't need to leave him out in the middle of a field in the middle of a dark night where he would not be found for hours * * *." The trial court rejected defense counsel's contention that the prosecution was attempting to argue non-aggravating factors, noting that the jury was permitted to consider, under the sentencing statute, the nature and circumstances of the crime. The court further agreed with the prosecution that the statements were directed toward evidence concerning the aggravating circumstance under R.C. 2929.-04(A)(3) (*i.e.,* that "[t]he offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender"). We likewise find no prejudicial error resulting from these statements.

While we do agree that a few of the remarks during closing at the penalty phase were improper, including the prosecution's misquoting of scripture in an attempt to present a "Golden Rule" argument, we cannot conclude, based upon a consideration of the entire record, that the conduct of the prosecution deprived defendant of a fair trial. Despite the objectionable remarks, the jury chose not to recommend the death penalty. Further, the sentence imposed was not inappropriate to the crime.

Defendant's seventh assignment of error is overruled.

Under the eighth assignment of error, defendant contends that the trial court erred in refusing to instruct the jury that residual doubt could be considered as a mitigating factor at the penalty phase of the trial.

We are unpersuaded. While the Ohio Supreme Court has held that "[r]esidual doubt of a capital defendant's guilt may be properly considered in mitigation," *State v. Watson* (1991), 61 Ohio St.3d 1, 17, 572 N.E.2d 97, 110–111, the court has

not specifically held that an instruction on residual doubt is mandatory; rather, it is required that there be a showing of prejudice. *State v. Jackson* (1991), 57 Ohio St.3d 29, 41, 565 N.E.2d 549, 561–562, certiorari denied (1991), 502 U.S. ——, 112 S.Ct. 117, 116 L.Ed.2d 86.

In the present case, the trial court instructed the jury that the mitigating factors "include, but are not limited to, the nature and circumstance of the offense, the history, prior record and background, character and background of the offender, and *any other factors that are relevant to the issue of whether the offender should be sentenced to death.*" (Emphasis added.) The instruction given by the trial court tracked the "catchall" provision of R.C. 2929.04(B), thereby allowing the jury to consider residual doubt; further, the court did not specifically prohibit the consideration of this factor. *State v. Roe* (1989), 41 Ohio St.3d 18, 20, 535 N.E.2d 1351, 1356, certiorari denied (1990), 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774. Moreover, a review of the record indicates that defendant did not argue residual doubt at the sentencing hearing and, more significantly, the jury did not impose the death penalty in the instant case. Defendant has failed to show prejudicial error.

Based upon the foregoing, defendant's eighth assignment of error is without merit and is overruled.

■■■ Under the ninth assignment of error, defendant asserts that the trial court erroneously refused to instruct the jury concerning defendant's eligibility for parole if sentenced to serve life in prison with the possibility of parole after either twenty or thirty full years. More specifically, in the present case, the defendant submitted proposed jury instructions providing, in pertinent part, that "[a] sentence of life imprisonment with the possibility of parole after twenty or thirty years means that the defendant would have to serve every day of that term before he could be considered by the Parole Board for release on parole" and that "[t]here is no certainty that Mr. Crago would ever be released on parole."

While the trial court rejected defendant's proposed jury instructions, the court instructed the jury, in part, that "the law provides three possible sentences for your consideration, life imprisonment with the possibility of parole only after twenty full years; life with the possibility of parole only after thirty full years, or death." Defendant maintains that surveys indicate that jurors cannot be expected to fully understand that the term "full years" means every day must be served, undiminished by time off for good behavior.

We find no error in the trial court's failure to give defendant's proposed instructions. Initially, as noted by the state, defendant's argument is inapplicable to the facts of this case, inasmuch as the jury did not recommend the death penalty. Further, the instruction given by the trial court tracked the language of

(

R.C. 2929.03(D), and the instruction "in no way suggests that the defendant will not serve the full twenty- or thirty-year sentence * * *." *State v. Mills* (1992), 62 Ohio St.3d 357, 375, 582 N.E.2d 972, 988, certiorari denied (1992), 505 U.S. ——, 112 S.Ct. 3048, 120 L.Ed.2d 915. See, also, *State v. Bedford* (1988), 39 Ohio St.3d 122, 125, 529 N.E.2d 913, 917, certiorari denied (1989), 489 U.S. 1072, 109 S.Ct. 1357, 103 L.Ed.2d 825.

Defendant's ninth assignment of error is without merit and is overruled.

Based upon the foregoing, defendant's nine assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

BOWMAN and JOHN C. YOUNG, JJ., concur.